GULF & WESTERN INDUSTRIES,
INC., Appellant,

v.

UNITED STATES of America et al.

No. 79–1646.

United States Court of Appeals,
District of Columbia Circuit.

Nov. 6, 1979.

Rehearing Denied Jan. 14, 1980.

Motion to Modify Granted in Part and
Denied in Part Feb. 5, 1980.

Gregory J. Battersby, New York City, Glade F. Flake, Washington, D. C., and Thomas E. Harrison, Jr., New York City, were on the brief, for appellant.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. On June 1, 1978, the district court granted a motion for summary judgment filed by the United States, but not joined in by the Department of Defense. Also, the June 1, 1978, order (151a) denied plaintiff's initial motion for summary judgment filed three days before defendants' motion. An appeal from that order to this court (No. 78–1863) was dismissed for lack of a final appealable order by this court's April 26, 1979, order, which was accompanied by a Memorandum providing that if a final judgment was entered, disposing of the claim against the Department of Defense, a new appeal could be brought on the briefs and record filed at No. 78–1863, supplemented to show further proceedings. On June 5, 1979, the district court entered an order granting summary judgment in favor of the Department of Defense, as well as the United States. Oral argument on the merits of this appeal had been heard by this panel, then constituted under No. 78–1863, on March 16, 1979, and the panel was subsequently reconstituted under No. 79–1646.

An opinion by Judge Smith, supporting the June 1, 1978, order, is reproduced at 146a (*Gulf & Western Industries, Inc. v. United States*, Civil No. 77–1816, D.D.C.). Although there are two named defendants (the United States of America and the United States Department of Defense) as a result of a stipulation (34a) filed March 15, 1978, the motion for summary judgment was phrased in the singular by the United States of America.

Carl S. Rauh, U. S. Atty., John A. Terry, Karen I. Ward and Michael J. Ryan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

Before LEVENTHAL and ROBINSON, Circuit Judges, and VAN DUSEN,* Senior Circuit Judge for the United States Court of Appeals for the Third Circuit.

Opinion for the Court filed by Senior Circuit Judge VAN DUSEN.

VAN DUSEN, Senior Circuit Judge:

▇ This appeal is from a June 5, 1979, district court order granting defendants' motion for summary judgment [1] in an action arising under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(B),[2] in which plaintiff sought disclosure of complete, unexpunged copies of documents in the Rule 4 file in an Armed Services Board of Contract Appeals (ASBCA) proceeding (Appeal of Norris Industries, Inc. (Norris), ASBCA No. 21651).[3] Because we have con-

2. 5 U.S.C. § 552(a)(4)(B) provides:
    "(a) Each agency shall make available to the public information as follows:

    . . . . .

    "(4) . . .
    "(B) On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action."

3. ASBCA No. 21651 is an appeal from a decision of the Contracting Officer denying Norris' claim for additional funds under Contract No. DAAA21–74–C–0098, which involved the production of 155-millimeter M549 warheads for the United States Army.

    The Rule 4 file is an evidentiary file compiled by an employee of the Department of Defense after the filing of an appeal with ASBCA. Other documentary evidence may be added to the file by the parties. Rule 4 states in part:

cluded that the information sought was properly withheld pursuant to exemption 4 [4] of the FOIA as held by the district court, we affirm the June 5, 1979, order.

The ASBCA reviewed the documents requested and concluded that certain portions of the documents were exempt pursuant to exemption 4. As a result, the ASBCA deleted those portions of the documents before releasing them to plaintiff. Plaintiff contends that the ASBCA was incorrect in making the above-mentioned deletions. Generally, the information withheld concerned Norris' profit rate, actual loss data, general and administrative expense rates, projected scrap rates and learning curve data.

The plaintiff appealed the ASBCA decision to the Assistant Secretary of Defense for Public Affairs, who, for the most part, affirmed the ASBCA decision. The plaintiff then filed suit in the district court, seeking the release of those portions of the documents that had been deleted by the ASBCA. As noted above, the district court

concluded that the information sought was properly deleted pursuant to exemption 4.

■ In order for information to come within exemption 4, the information must be (1) commercial or financial, (2) obtained from a person outside the government, and (3) privileged or confidential. *National Parks and Conservation Ass'n v. Morton*, 162 U.S.App.D.C. 223, 498 F.2d 765 (D.C. Cir. 1974); *Soucie v. David*, 145 U.S.App. D.C. 144, 448 F.2d 1067 (D.C. Cir. 1971); *Grumman Aircraft Engineer. Corp. v. Renegotiation Board*, 138 U.S.App.D.C. 147, 425 F.2d 578 (D.C. Cir. 1970).

It is undisputed that the information in this case is financial or commercial. In addition, the information in this case that was deleted by the ASBCA was obtained from a person [5] outside the government.

The plaintiff argues that deleted portions of the Defense Contract Audit Agency Audit Report contains information produced by the government and not information obtained from an outside party.[6] It is ap-

"4. *Preparation, Contents, Organization, Forwarding, and Status of Appeal File* —

"(a) *Duties of Contracting Officer* —Within 30 days of receipt of an appeal, or advice that an appeal has been filed, the contracting officer shall assemble and transmit to the Board, with a copy to the Government trial attorney, an appeal file consisting of all documents pertinent to the appeal, including:
(1) the decision and findings of fact from which appeal is taken;
(2) the contract, including specifications and pertinent amendments, plans and drawings;
(3) all correspondence between the parties pertinent to the appeal, including the letter or letters of claim in response to which decision was issued;
(4) transcripts of any testimony taken during the course of proceedings, and affidavits or statements of any witnesses on the matter in dispute made prior to the filing of the notice of appeal with the Board;
(5) any additional information considered pertinent.
"Within the same time above-specified, the contracting officer shall furnish the appellant a copy of each document he transmits to the Board, except those stated in subparagraph (a)(2) above, as to which a list furnished appellant indicating specific contractual documents transmitted will suffice, and those stated in subparagraph (d), below.

"(b) *Duties of the Appellant* —Within 30 days after receipt of a copy of the appeal file assembled by the contracting officer, the appellant shall supplement the same by transmitting to the Board any documents not contained therein which he considers pertinent to the appeal, and furnishing two copies of such documents to the Government trial attorney."

4. Exemption 4 (5 U.S.C.A. § 552(b)(4)) states:
"(b) This section does not apply to matters that are—

. . . . .

"(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential."

5. 5 U.S.C.A. § 551(2) defines the term "person" to include individuals, partnerships, corporations or associations.

6. The following are the deletions made from the Defense Contract Audit Agency Audit Report:
"(3) Rule 4, Tab 6
"(a) paragraph 2: the contractor's actual cost for units produced, and resultant loss, were deleted since such data will certainly affect future bids.
"(b) paragraph 2(b)(2): actual scrap rates were deleted since this information will cer-

parent that the ASBCA deleted portions of the report which contained information supplied by Norris or from which information supplied by Norris could be extrapolated.

The deleted portions of the report included, among other things, "actual costs for units produced," "actual scrap rates," "break-even point calculations" and "actual cost data." *See* footnote 6. Therefore, the release of this information would disclose data supplied to the government from a person outside the government. *Fisher v. Renegotiation Board,* 355 F.Supp. 1171 (D.D.C.1973).

The information in question meets the final requirement of exemption 4 in that it is privileged or confidential. Information is privileged or confidential if it is not the type usually released to the public and is of the type that, if released to the public, would cause substantial harm to the competitive position of the person from whom the information was obtained. *National Park and Conservation Ass'n v. Morton, supra,* 162 U.S.App.D.C. at page 228, 498 F.2d at page 770. *Accord, Charles River Park "A," Inc. v. Department of H. & U. D.,* 171 U.S.App.D.C. 286, 519 F.2d 935 (D.C. Cir. 1975); *Continental Oil Company v. F. P. C.,* 519 F.2d 31 (5th Cir. 1975); *Pacific Architects & Eng. Inc. v. Renegotiation Bd.,* 164 U.S.App.D.C. 276, 505 F.2d 383 (D.C. Cir. 1974).

In order to show the likelihood of substantial competitive harm, it is not necessary to show actual competitive harm. Actual competition and the likelihood of substantial competitive injury is all that need be shown. *National Parks and Conservation Ass'n v. Kleppe,* 178 U.S.App.D.C. 376, 547 F.2d 673 (D.C. Cir. 1976). The record in this case indicates that Norris has actual competition.[7] Flinchbaugh has produced the M549 warhead for the government and has submitted bids in competition with Norris. Furthermore, we were informed in the spring of 1979 that bids would be solicited by the Army on this product.

Norris' competitors would be able to accurately calculate Norris' future bids and its pricing structure from the withheld information. The deleted information, if released, would likely cause substantial harm to Norris' competitive position in that it would allow competitors to estimate, and undercut, its bids. This type of information has been held not to be of the type normally released to the public and the type that would cause substantial competitive harm if released. *National Parks and Conservation*

---

tainly be utilized in projecting a scrap rate for future procurements.

"(c) paragraph 2(c): break-even point calculation is deleted as clearly financial data.

"(d) paragraph 2(e): actual cost data was deleted.

"(e) DCAA Worksheets: these were deleted in their entirety since they contain a detailed breakdown of actual cost by individual job order for material, labor and burden.

"(4) Rule 4, Tab 7

"(a) paragraph 1a: total settlement amount was deleted to prevent disclosure of included profit rate.

"(b) exhibit A: profit and totals containing profit were deleted.

"(c) exhibit A, paragraph 3.b.: anticipated percent of learning factor was deleted.

"(d) exhibit A, paragraph 3.e.(2): total actual costs incurred were deleted.

"(7) Rule 4, Tab 10

"(a) page 1: total claim amount deleted to avoid disclosure of profit rate.

"(b) exhibit A: profit and totals containing profit were deleted.

"(c) exhibit A, para. 3: contractor's proposed G&A rate was deleted.

"(d) page 6: profit rate was deleted." (10a–11a).

7. Norris Industries (Norris) and Flinchbaugh Industries, Inc. (Flinchbaugh), formerly a division of plaintiff, are competitors. A stipulation filed in the district court includes this wording:

"1. Contract DAAA21–72–C–0330, awarded on January 14, 1972, to Flinchbaugh Products Division of Gulf & Western Industries, Inc., was the first mass production contract awarded by the United States Army for the manufacture of 155mm, M549 warheads from HF–1 steel.

"2. Contract DAAA21–74–C–0098, awarded on September 7, 1973, to Norris Industries, was the second mass production contract awarded by the United States Army for the manufacture of 155mm, M549 warheads from HF–1 steel."

*Ass'n v. Kleppe, supra,* 178 U.S.App.D.C. at 384–386, 547 F.2d at 681–83; *Sterling Drug, Inc. v. FTC,* 146 U.S.App.D.C. 237, 450 F.2d 698 (D.C. Cir. 1971).

In its supplemental brief, plaintiff contends that *Chrysler Corp. v. Brown et al.,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208, states "that Congress had not intended the FOIA exemptions be mandatory bars to disclosure." The simple fact is that: in *Chrysler* the Court was dealing with a case where the government agency wished to make disclosure, and it was objected (in vain) that FOIA was a bar; in contrast, the government agency in our case does *not* wish to make disclosure, and it is objected that FOIA compels the disclosure. The two situations are diametrically different.

Furthermore, *Chrysler* simply cannot be viewed as a judicial indication that FOIA is pointed to universal disclosure. We take note of the following language used by the Court in that case (441 U.S. at 291–294, 99 S.Ct. at 1712–1714):

> "Chrysler contends that the nine exemptions in general, and Exemption 4 in particular, reflect a sensitivity to the privacy interests of private individuals and non-governmental entities. That contention may be conceded without inexorably requiring the conclusion that the exemptions impose affirmative duties on an agency to withhold information sought.[11]

> "11 See, e. g., H.R.Rep. No. 1497, 89th Cong., 2d Sess., 10 (1966) (emphasis added):
> '[Exemption 4] would assure the confidentiality of information obtained by the Government through questionnaires or through material submitted and disclosures made in procedures such as the mediation of labor-management controversies. It exempts such material if it would not customarily be made public by the person from whom it was obtained by the Government . . . .. It would . . . include information which is given to an agency in confidence, since a citizen must be able to confide in his Government. Moreover, *where the Government has obligated itself in good faith not to disclose documents or information which it receives, it should be able to honor such obligations.'*
> "The italicized passage is obviously consistent with Exemption 4's being an exception to the disclosure mandate of the FOIA and not a limitation on agency discretion.

In fact, that conclusion is not supported by the language, logic or history of the Act.

  .      .      .      .      .

> " . . . The Act is an attempt to meet the demand for open government while preserving workable confidentiality in governmental decision-making.[12] Con-

> "12 See S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965):
> 'It is not an easy task to balance the opposing interests, but it is not an impossible one either. It is not necessary to conclude that to protect one of the interests, the other must, of necessity, either be abrogated or substantially subordinated. Success lies in providing a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure.'

> gress appreciated that with the expanding sphere of governmental regulation and enterprise, much of the information within Government files has been submitted by private entities seeking Government contracts or responding to unconditional reporting obligations imposed by law. There was sentiment that Government agencies should have the latitude, in certain circumstances, to afford the confidentiality desired by these submitters.[13] But the congressional concern

> "13 *Id.,* at 9; n. 11, *supra.*

> was with the *agency's* need or preference for confidentiality; the FOIA by itself protects the submitters' interest in confidentiality only to the extend that this interest is endorsed by the agency collecting the information.

> "*Enlarged access to governmental information undoubtedly cuts against the privacy concerns of non-governmental entities, and as a matter of policy some balancing and accommodation may well be desirable. We simply hold here that Congress did not design the FOIA exemptions to be mandatory bars to disclosure.*[14]

> "14 It is informative in this regard to compare the FOIA with the Privacy Act of 1974, 5 U.S.C. § 552a. In the latter Act Congress explicitly requires agencies to withhold records about an individual from most third parties unless the subject gives his permission. Even more telling is 49 U.S.C. § 1357, a section which authorizes the Administrator of the FAA to take antihijacking measures, including

research and development into protection devices.

'Notwithstanding [FOIA], the Administrator shall prescribe such regulations ·as he may deem necessary to prohibit disclosure of any information obtained or developed in the conduct of research and development activities under this subsection if, in the opinion of the Administrator, the disclosure of such information—

. . . . .

'(B) would reveal trade secrets or privileged or · confidential commercial or financial information obtained from any person . . .. *Id.,* § 1357(d)(2)(B).'

[Emphasis supplied.]

"This conclusion is further supported by the legislative history. The FOIA was enacted out of dissatisfaction with § 3 of the Administrative Procedure Act, which ·had not resulted in as much disclosure by the agencies as Congress later thought desirable. Statements in both the Senate and House Reports on the effect of the exemptions support the interpretation that the exemptions were only meant to permit the agency to withhold certain information, and were not meant to mandate nondisclosure. For example, the House Report states:

'[The FOIA] sets up workable standards for the categories of records which *may* be exempt from disclosure . . ..

'. . . There may be legitimate reasons for nondisclosure and [the FOIA] is designed to *permit* nondisclosure in such cases.

'[The FOIA] lists in a later subsection the specific categories of information which *may* be exempted from disclosure.'

"We therefore conclude that Congress did not limit an agency's discretion to disclose information when it enacted the FOIA."

In this case, the agency had determined that the portions of the documents which plaintiff seeks should be deleted before disclosure (see pages —— —— of 199 U.S. App.D.C., pages 528–529 of 615 F.2d above).[8]

■ Also, the plaintiff argues that the deleted information is not confidential because it has already been made public by Norris and, therefore, is not confidential. It is conceded that Norris allowed the plaintiff's attorney to review the Rule 4 file in connection with another proceeding before the ASBCA. ASBCA rules encourage voluntary discovery and Norris allowed the plaintiff a limited document inspection.[9]

---

**8.** *Cooper v. Department of Navy of the United States,* 594 F.2d 484 (5th Cir. 1979), and *Exxon Corp. v. Federal Trade Com'n,* 466 F.Supp. 1088 (D.D.C.1978), relied on by plaintiff in its supplemental brief, are factually inapplicable to the situation presented by this appeal. Furthermore, *Comstock Intern. v. Export-Import Bank of U.S.,* 464 F.Supp. 804 (D.D.C.1978), supports the district court order being affirmed by this opinion. In that case, the court approved the refusal of the Export-Import Bank of the United States, in reliance on 5 U.S.C. § 552(b)(4), to release progress reports and other documents containing financial information relating to a construction project financed by a loan from that bank. The court pointed out the likelihood that disclosure of the commercial and financial information would significantly impair the bank's function of promoting United States exports and its ability to obtain necessary information similar to that in the progress reports in the future. Also, the court stated that· disclosure would result in substantial harm to the competitive position of the suppliers of the information, citing the decisions relied on in this opinion.

**9.** The pertinent ASBCA rule provides:

"(a) *General Policy and Protective Orders* —The parties are encouraged to engage in voluntary discovery procedures. In connection with any deposition or other discovery procedure, the Board may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, and those orders may include limitations on the scope, method, time and place for discovery, and provisions for protecting the secrecy of confidential information or documents."

Rules of the Armed Services Board of Contract Appeals, Rule 14(a).

The parties to this appeal disagree as to exactly what limits were placed on the inspection of the documents by plaintiff's attorney. There is, however, no assertion that Norris, in permitting the limited inspection, intended to waive any claims of confidentiality. On the contrary, the record is clear, on either party's view of the evidence, that plaintiff's attorney at no time received any indication that he would be permitted to copy or removed any documents concerning which Norris intended to assert a privilege.

David L. Hirsch, an attorney for Norris, stated in a declaration dated April 25, 1978, that:

> "I permitted Mr. Harrison [counsel for plaintiff] to review the Rule 4 file in ASBCA case No. 21651 as a courtesy to a fellow attorney but indicated to Mr. Harrison that he would not be permitted to copy any documents from that file which I believe to be privileged or otherwise confidential." (153a) [10]

The plaintiff was refused copies of all the documents in question in this case. Norris did not make a public disclosure or waive the confidential nature of these documents. It made a limited disclosure, complying with the spirit of ASBCA Rule 14(a). *See* footnote 8. Norris also took steps to prevent the information from being disclosed to the public and to maintain the confidential character of the documents. Under the circumstances of this case, Norris' actions did not alter the confidential status of the documents.

These documents would lose their confidentiality only if the information was publicly disseminated and available from sources other than Norris. *Continental Oil Company v. F. P. C., supra* at 35. There is no evidence in this record which indicates that the deleted information is available from any other source or was publicly disseminated.[11]

Furthermore, this court disapproves of any possible attempt by plaintiff to take advantage of the courtesy of Norris' counsel in order to obtain the withheld documents. Counsel for Norris, in allowing plaintiff to review the Rule 4 file, was extending a courtesy to plaintiff's counsel in accordance with ASBCA Rule 14(a) and Ethical Considerations EC 7–10 and 7–38 of the Code of Professional Responsibility. The thrust of these ethical principles are that a lawyer should treat his opponent with courtesy and accede to reasonable requests for cooperation. EC 7–38 states in part:

> "A lawyer should be courteous to opposing counsel and should accede to reasonable requests regarding court proceedings, settings, continuances, waiver of procedural formalities, and similar matters which do not prejudice the rights of his client."

Counsel for Norris attempted to conform his conduct to the above-mentioned ethical rules and simultaneously to protect the interests of his client by not allowing the copying of confidential documents. Plaintiff's allegation concerning this issue might be construed as an attempt to take advantage of the courtesy extended by Norris' counsel.

In addition, it is apparent from the conduct of Norris' counsel that the maintenance of the confidential nature of these documents was an implied condition of allowing the inspection of the Rule 4 file documents by counsel for plaintiff and Flinchbaugh. The waiver of confidentiality argument of plaintiff contradicts that implied agreement. The late Henry S. Drinker, Esq., a renowned authority on legal ethics, states:

> "Any agreement or representation which a lawyer makes for the client's benefit, he must, of course, scrupulously keep—as well as any agreement with the court or

10. A March 23, 1978, declaration of Thomas E. Harrison, the attorney for appellant who inspected the documents, does not suggest the contrary. In particular, Mr. Harrison's declaration does not contradict Mr. Hirsch's statement that he was permitted to examine the file "as a courtesy to a fellow attorney."

11. This court rejects plaintiff's contention that the confidentiality of these Rule 4 documents must be secured by application for a protective order under ASBCA Rule 14 and that the failure of Norris to apply for such an order in ASBCA No. 21651 waives its rights to confidential treatment of the documents under exemption 4 (see note 4 above).

The record in this case shows that confidential materials in a Rule 4 file are uniformly withheld from the public without a party applying for a protective order. ASBCA Rule 14 appears designed to apply to documents in a proceeding before ASBCA which would not readily be recognized as privileged or confidential by the ASBCA. Norris had the right to rely on the ASBCA's practice regarding confidential documents and did not waive any rights by not seeking a protective order.

the opposing lawyer for his personal convenience, or in courtesy for the reasonable accommodation of other lawyers." H. Drinker, Legal Ethics 194 (1953). The plaintiff's waiver of confidentiality arguments could be construed to be a breach of an agreement made for the benefit of plaintiff and plaintiff's counsel. The actions of plaintiff's counsel in this matter might give the appearance of being unfair and improper and, therefore, should be avoided. *See* Code of Professional Responsibility, Canon 9.

This court believes that such conduct should be discouraged. Judicial approval of such conduct would make lawyers reluctant to cooperate with each other, as contemplated by the Code of Professional Responsibility. This would lead to protracted litigation and a heavier burden on the courts, administrative tribunals, lawyers and litigants.

For the foregoing reasons, this court will affirm the district court's holding that exemption 4 is applicable to the deleted information in this case. Costs will be taxed against appellant.