**SHERMCO INDUSTRIES, INC. and Peter A. Sherman, Plaintiffs-Appellees,**

v.

**SECRETARY OF the AIR FORCE, Defendant-Appellant.**

**No. 78–2499.**

United States Court of Appeals, Fifth Circuit.

March 19, 1980.

---

Alice Mattice, Leonard Schaitman, Dept. of Justice, Appellate Section, Washington, D. C., for defendant-appellant.

Wesner & Wyler, C. Thomas Wesner, Jr., Dallas, Tex., for plaintiffs-appellees.

Before BROWN, TJOFLAT and GARZA, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

After its bid for a contract to overhaul airborne generators was rejected by the Air Force, Appellee Shermco Industries, Inc. (Shermco) filed a protest with the General Accounting Office (GAO) and requested from the Air Force the production of several documents in connection with this pro-

test. The Air Force produced all but seven of these documents and Shermco sued for their disclosure under the Freedom of Information Act, 5 U.S.C. § 552 (1977) (FOIA). The District Court ordered the production of the documents, holding that the exemptions of 5 U.S.C. §§ 552(b)(4) and (5) were inapplicable.[1] We reverse.

## I. Factual Background

In 1976, Shermco had a five-year contract with the Air Force to overhaul airborne generators at McClellan Air Force Base near Sacramento, California. The Air Force terminated the contract in its third year, citing "quality problems," and solicited offers from a number of contractors, including Shermco, to continue the work. On October 14, 1976, Shermco was informed that Tayko Industries, Inc. (Tayko) was the lowest acceptable bidder and that Shermco's bid was rejected. On October 22, 1976, Shermco filed a protest with the GAO pursuant to 4 CFR Part 20 (1979). Shermco and its president made several requests to the Air Force for information concerning Tayko's bid to help Shermco implement its protest. These requests included ones made under FOIA and the Privacy Act.[2] The Air Force produced twenty-four of the requested items but withheld seven others—three legal memoranda which had been attached to the Air Force's response to the protest,

the contracting officer's recommendation prepared in connection with the protest,[3] and three documents containing Tayko's basic pricing information, including "items, quantities and unit prices." On November 10, 1977, Shermco filed suit against the Secretary of the Air Force to obtain these documents, pursuant to FOIA and the Privacy Act.

■ The District Court held that FOIA required the disclosure of all seven documents requested. The Secretary appeals this holding and we reverse.[4]

## II. The Cost Proposals And Exemption 4

The Air Force's basis for the withholding of Tayko's cost proposals was Exemption 4 of FOIA, 5 U.S.C. § 552(b)(4), which provides that the Government is not required to disclose

> trade secrets and commercial or financial information obtained from a person and privileged or confidential . . . .

The Air Force argued that because there had not been a final award of the contract, this information should remain confidential until a final award was made. To disclose this information before a final decision was made would make it more difficult for the Air Force to make its final decision and would be prejudicial to the low bidder, undermining his competitive advantage.

---

1. *Shermco Industries, Inc. v. Secretary of the Air Force*, 452 F.Supp. 306 (N.D.Tex.1978).

2. 5 U.S.C. § 552a (1977).

3. Since the Air Force has decided to release the contracting officer's recommendation, the disclosure of this document is not at issue on this appeal.

4. At oral argument, this Court learned that in December, 1978, the GAO denied Shermco's protest. At first glance it seems that this would give the Air Force the right to make a final award of the contract to Tayko and moot the central issue of this appeal, whether or not the Air Force's decision is final. However, Shermco can request reconsideration of the decision by the GAO. 4 CFR § 20.9 (1979). Moreover, Congress has amended the Small

Business Administration Act to give the SBA the power to determine the competency of a small business to perform a government procurement contract. This Certificate of Competency, once awarded, is deemed conclusive proof of the small business' abilities, and the contract must be awarded to it. Pub.L. 95–89, Title V, § 501, Aug. 4, 1977, 91 Stat. 561; 15 U.S.C. § 637(b)(7) (West Supp.1979). *See* House Conference Report 95–535, 1977 U.S. Code Cong. & Admin.News vol. 2 at 821, 851–52. The current status of the proceedings in this case is that the Air Force has not yet awarded the contract to Tayko but is doing the work internally. Thus, there has not yet been a final decision, and since the Appellee still has remedies it can seek from the GAO and the SBA, this appeal is not moot.

The District Court conceded that the decision was not yet technically final (452 F.Supp. at 322) and that, if there were no final award, Exemption 4 would apply (*id.* at 324). However, the Court found that, for purposes of FOIA, the decision was final (*id.* at 322), and that "[a]ny need for secrecy [was] no longer present because the award [would] be made either to the successful bidder or the protester . . . ." *Id.* at 324. Therefore, the Court concluded, the cost proposals were no longer confidential nor exempt.

■ The purpose of Exemption 4 is twofold—to protect the interests of individuals who disclose confidential information to government agencies and to protect the Government as well. *National Parks and Conservation Association v. Morton*, 162 U.S.App.D.C. 223, 228, 498 F.2d 765, 770 (D.C. Cir. 1974).[5] This information concerning Tayko's cost proposals, in the hands of a competitor prior to the time of a final award, would jeopardize the Air Force's ability to discern clearly which bidder could do the best job for the lowest price. Moreover, the nondisclosure of this information is in keeping with the Armed Services Procurement Regulations (ASPR) policy prohibiting bidding with knowledge of competing bids.[6] Nondisclosure prior to final award also encourages competing bidders to enter bids which accurately reflect their capabilities and their costs; this secrecy protects the bargaining power of each competitor's bid. Absent the assurance of this confidentiality, bidders might be reluctant to disclose such information to the procuring government agency.

■ On appeal, the Air Force reasserts the same argument—that their selection of Tayko as the lowest acceptable bidder did not amount to a final award. To support this contention it cites GAO briefing papers stating that the effect of a GAO ruling in favor of a protestor in a pre-award protest is not necessarily that he will be awarded the contract. It may mean the contract bidding will be reopened to choose the next lowest responsible bidder. Therefore, the reasons for withholding the cost proposals pursuant to Exemption 4 still exist.

We feel that the District Court misunderstood the bid protest procedure when it characterized the award as a final decision. The October 14th notice to Shermco was of a proposed award to Tayko; it was not a final decision. The District Court's statement that there was no need for secrecy because the award would be made either to Tayko or to Shermco is contrary to GAO protest procedure. It is amply clear from the record and from oral argument that there is a possibility that if the protest were to succeed either before the GAO, the SBA or some other forum, the bidding could be reopened. Thus, the Tayko pricing infor-

---

5. In *Federal Open Market Committee of the Federal Reserve System v. Merrill*, 443 U.S. 340, 355–360, 99 S.Ct. 2800, 2810–2812, 61 L.Ed.2d 587, 601–03 (1979), the need for nondisclosure of information received by an agency concerning the award of a contract, prior to the award of that contract, is acknowledged and discussed in the context of Exemption 5, the exemption for certain intra- and inter-agency memoranda (discussed *infra* at 1318–1319. Further discussion of the *Merrill* opinion is at note 11, *infra*. We believe the need for secrecy of commercial information prior to the award of a contract is equally, if not more important in the context of Exemption 4, where the information is derived from a private party, rather than a government agency.

6. ASPR 3–805.3(b) & (c); 32 CFR 3.805.3(b) & (c) (1976):

> **3–805.3** *Discussions With Offerors.*
>
> \* \* \* \* \* \*
>
> (b) Discussions shall not disclose the strengths or weaknesses of competing offerors, or disclose any information from an offeror's proposal which would enable another offeror to improve his proposal as a result thereof.
>
> (c) Auction techniques are strictly prohibited; an example would be indicating to an offeror a price which must be met to obtain further consideration, or informing him that his price is not low in relation to another offeror. On the other hand, it is permissible to inform an offeror that his price is considered by the Government to be too high.

mation is covered by Exemption 4 and should not have been disclosed.[7]

### III. The Legal Memoranda And Exemption 5

The refusal of the Air Force to disclose three legal memoranda attached to its response to Shermco's protest was based on Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5):

> inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.
> . . . .

The District Court found the Air Force memoranda to be "legal opinions prepared to assist the contracting officer in making his decision awarding the overhauling contract," which would not normally have been releasable because of this exemption. 452 F.Supp. at 322. However, since, according to the District Court, the Air Force award of the contract to Tayko was a final decision, these intra-agency memoranda in defense of the bid protest became part of the basis of that decision and were releasable under *NLRB v. Sears-Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Moreover, it was the District Court's opinion that by sending these memoranda to the GAO, the Air Force had waived its rights to assert the confidentiality of these otherwise internal staff opinions. 452 F.Supp. at 322. These memoranda had become part of the Air Force's "official position" against the protest by Shermco. For both reasons, these documents were deemed releasable.

### A. The Executive Privilege For Communications Relating To Governmental Deliberations

██ Exemption 5 incorporates at least two [8] types of privileges traditionally available to the Government in civil litigation—(i) the attorney-client and attorney work-product privileges [9] and (ii) the executive privilege for information relating to governmental deliberations. *NLRB v. Sears Roebuck & Co., supra,* 421 U.S. at 149–54; 95 S.Ct. at 1515–1518, 44 L.Ed.2d at 46–49.

██ The executive privilege grew out of a need to protect the governmental decision-making process by assuring those persons, both inside and outside the decision-making agency, who offer information and opinions to the Government that their communications will be kept in confidence. *NLRB v. Sears, supra,* 421 U.S. at 151–52, 95 S.Ct. 1516–1517, 44 L.Ed.2d 47–48. *See Mead Data Central, Inc. v. United States Department of Air Force,* 184 U.S.App.D.C. 213, 225–226, n. 28, 566 F.2d 242, 254–55, n. 28 (D.C. Cir. 1977). For this reason, the Supreme Court has distinguished between pre-decisional communications which are exempt from disclosure and post-decisional communications which are not. *NLRB v. Sears,* 421 U.S. at 152–53, 95 S.Ct. at 1517, 44 L.Ed.2d at 48–49; *Renegotiation Board v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 1500; 44 L.Ed.2d 57, 71 (1975). *See Audio Technical Service v. Army, supra.* Disclosure of pre-decisional communications presents more

---

**7.** Recently, in *Audio Technical Services, Ltd. v. Department of Army,* C.A. No. 78–2260 (October 25, 1979), the Federal District Court of the District of Columbia specifically rejected the position of the Northern District of Texas in *Shermco* and held that bid proposals of a successful bidder for a government contract, sought by an unsuccessful bidder in conjunction with a GAO protest, fell within Exemption 4. Interestingly, the District of Columbia Court so held, even though it characterized the award of the contract as final. Instead, the Court relied solely on the policy considerations, holding *sub silentio* that the need for secrecy remains even after a final award.

**8.** A very recent Supreme Court decision, *Federal Open Market Committee v. Merrill, supra,* holds that Exemption 5 also incorporates a qualified privilege for confidential commercial information, modeled along the lines of F.R. Civ.P. 26(c)(7). This exemption is discussed in more detail *infra* at note 11.

**9.** Because we hold that the Air Force's legal memoranda come under the executive privilege of Exemption 5, we need not consider Appellants' alternative argument that these memoranda are also exempt as attorney work-products.

danger that governmental sources of information and advice will be inhibited. Besides, there is less public concern for this information, whereas the public is vitally interested in learning an agency's reasons for a final decision which has the effect of law. _NLRB v. Sears, supra,_ 421 U.S. at 151–52, 95 S.Ct. at 1516–1517, 44 L.Ed.2d at 47–48.

In _Sears,_ the Supreme Court emphasized that this distinction is supported by FOIA itself—5 U.S.C. § 552(a)(2)(A) [10]—which requires the disclosure of all final agency opinions. 421 U.S. at 153, 95 S.Ct. at 1517, 44 L.Ed.2d at 49. Thus, the Supreme Court concluded that if an advisory opinion of an agency staff member is expressly incorporated into a final agency decision, the policy considerations supporting the nondisclosure of this type of pre-decisional communication are no longer operable. Once the agency adopts its employee's advice as its own, the agency will defend its employee and he need no longer be concerned with adverse consequences if his communication becomes a matter of public record. Moreover, his advice, as part of a final agency opinion, has now become a matter of more profound public interest. 421 U.S. at 161, 95 U.S. at 1521, 44 L.Ed.2d at 53. Thus, in effect, what was once a pre-decisional communication becomes post-decisional and is no longer exempt from disclosure under Exemption 5.

_Grumman, supra,_ 421 U.S. at 184, 95 S.Ct. at 1500, 44 L.Ed.2d at 71, lists the criteria for identifying a post-decisional communication: (i) The decision must, of course, be final. (ii) The agency of which the information is demanded must possess the power to make the final decision into which the pre-decisional information is incorporated. (iii) Finally, the information must be adopted as part of the agency's reasoning for its decision. Because the _Grumman_ decision relied on _Sears,_ its companion case, we believe these criteria also should apply to the _Sears_ hybrid, the pre-decisional communication turned post-decisional. With respect to the third criterion, _Sears_ goes even further then _Grumman_ and holds that the hybrid, to become a post-decisional communication, must be "expressly adopt[ed] or incorporate[d] by reference" into the final opinion. 421 U.S. at 161, 95 S.Ct. at 1521–1522, 44 L.Ed.2d at 53.

In holding that the three legal memoranda submitted to the GAO by the Air Force did not fall within Exemption 5, the District Court followed _Sears_ but then held that these once pre-decisional memoranda, by being submitted to the GAO in connection with the Shermco protest, were incorporated into the Air Force's final decision to award the contract to Tayko, and therefore had become post-decisional.

█ In the leap from _Sears_ to this case we find this conclusion unacceptable for two reasons. First, as we stated earlier in this opinion, the proposed award of the contract to Tayko was not the final opinion of the Air Force.[11] Because the decision was not yet final, all the considerations

10. § 552. Public information; agency rules, opinions, orders, records, and proceedings
 (a) Each agency shall make available to the public information as follows:

 (2) Each agency, in accordance with published rules, shall make available for public inspection and copying—
 (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

11. _Shermco_ cites _Federal Open Market Committee v. Merrill, supra,_ "for the proposition that as soon as the Government awards a contract, any protection under Exemption 5 for any information generated in the process leading up to the award of the contract expires."
 The specific holding of the Supreme Court in _Merrill_ was "that Exemption 5 incorporates a qualified privilege for confidential commercial information, at least to the extent that this information is generated by the Government itself in the process leading up to awarding a contract." 443 U.S. at 360, 99 S.Ct. at 2812, 61 L.Ed.2d at 603. This newly created but qualified exception is in addition to the two traditional Exemption 5 privileges for attorney work-products and executive deliberations. We do not believe this new category of Exemption 5 information includes legal memoranda prepared by an agency to aid in its delibera-

which support the nondisclosure of pre-decisional communications were still in effect, as was Exemption 5. Second, even if it were a final decision, these memoranda were not expressly incorporated by reference into the opinion. They had been used by the Air Force internally in reaching their initial conclusion that Tayko was the lowest bidder, and they were produced to the GAO in aid of their defense against Shermco's protest, but they were never attached to any formal written decision by the Air Force.

### B. Waiver Of Exemption 5 Through Disclosure To GAO

■ The District Court also held that, by disclosing these memoranda to the GAO, the Air Force waived its rights to claim Exemption 5. We will begin by stating that the mere fact that one federal agency releases intra-agency communications to another federal agency cannot by itself imply the waiver of Exemption 5, which ex-

tions at issue in this case. We find two passages in *Merrill* to support this conclusion.

First, the Supreme Court found support for the creation of this privilege in F.R.Civ.P. 26(c)(7). This procedural rule permits a District Court to issue a protective order so "that a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way." The analogous privilege under Exemption 5 was created by the Supreme Court only for confidential commercial information, and did not mention confidential research, a category in which we believe legal memoranda more readily fall. We decline to read "Exemption 5 confidential commercial information" so broadly as to include every type of information which could be protected under Rule 26(c)(7) because the *Merrill* opinion expressly states "that Exemption 5 was [not] intended to incorporate every privilege known to civil discovery." 443 U.S. at 354, 99 S.Ct. at 2809, 61 L.Ed.2d at 599.

Second, the Supreme Court distinguishes between pre-decisional deliberations (and we have already held that the legal memoranda in the case before us are pre-decisional) and confidential commercial information which there is no need to protect after a contract is awarded. 443 U.S. at 360, 99 S.Ct. at 2812, 61 L.Ed.2d at 603. To us this is another indication that pre-decisional deliberations and confidential commercial information are not the same thing.

plicitly applies to inter-agency, as well as intra-agency, memoranda.

[8] Waiver occurs when an agency makes its information more broadcast than is allowed by its own regulations, *Cooper v. Department of Navy,* 594 F.2d 484 (5th Cir. 1979), but it does not occur when an agency whose action is being reviewed forwards to the reviewing agency legal memoranda in support of its position:

> By including *inter*-agency memoranda in Exemption 5, Congress plainly intended to permit one agency possessing decisional authority to obtain written recommendations and advice from a separate agency not possessing such decisional authority without requiring that the advice be any more disclosable than similar advice received from within the agency.

*Grumman, supra,* 421 U.S. at 188, 95 S.Ct. at 1502, 44 L.Ed.2d at 73. In reviewing the Air Force's preliminary decision to award this contract to Tayko, the GAO needed and

The language in the *Merrill* opinion on which Shermco relies in support of its proposition that the right to invoke Exemption 5 disappears as soon as a contract is awarded is as follows:

> The theory behind a privilege for confidential commercial information generated in the process of awarding a contract, however, is not that the flow of advice may be hampered, but that the Government will be placed at a competitive disadvantage or that the consummation of the contract may be endangered. Consequently, the rational for protecting such information expires as soon as the contract is awarded or the offer withdrawn.

443 U.S. at 360, 99 S.Ct. at 2812, 61 L.Ed.2d at 603.

Not only are the legal memoranda at issue in this case not confidential commercial information, but we do not believe the Supreme Court, when it made the above statement, was necessarily creating a rule which applies to all communications exempt under § 552(b)(5). Moreover, we do not believe the Supreme Court was attempting to define a final decision as equivalent to the award of a contract or pinpoint when the final award of a contract technically is made. The finality of an agency decision was not even at issue in *Merrill.* For all of the reasons we state above, we do not think the *Merrill* case is applicable here.

was entitled to the legal and technical advice of both parties. The Air Force should be allowed to supply this information without running the risk of waiving Exemption 5. The forwarding of these memoranda to the GAO was not a broadcast disclosure by the Air Force. It was no more than the submission of the agency's legal opinion in defense of a bid protest. There was thus no waiver of Exemption 5.

In sum, we hold that the Air Force's notice to Shermco was a proposed, and not a final, award of the contract to Tayko. There is a possibility that, if the GAO or its successor under the new law, the SBA, upholds the protest, that bidding will be reopened. All the policy reasons for exempting from disclosure both the Tayko cost proposals and the legal memoranda of the Air Force still operate to make this information immune from disclosure within the language of Exemptions 4 and 5.[12] Accordingly, we reverse the judgment of the District Court and remand this cause with orders to enter judgment in favor of the Appellant Air Force.

REVERSED and REMANDED.

12. The Air Force also has sought review of the District Court's award of attorney's fees to Shermco under 5 U.S.C. § 552(a)(4)(E). Because we reverse on all of the substantive claims of this appeal, Shermco has no longer "substantially prevailed" in this action, and the award of attorney's fees is also reversed.