**The J. H. LAWRENCE COMPANY, Plaintiff,**

v.

**The Honorable William French SMITH and The Honorable James N. Beggs and Robert M. Keefe, Defendants,**

**and**

**Dickinson-Heffner, Inc., Intervenor.**

**Civ. A. Nos. J–81–2993, J–82–361.**

United States District Court, D. Maryland.

Aug. 12, 1982.

Richard W. Moore, George W. Maugans, Baltimore, Md., for plaintiff.

Thomas C. Morrow, Baltimore, Md., for intervenor.

J. Frederick Motz, U. S. Atty., Stuart O. Simms, Asst. U. S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM

SHIRLEY B. JONES, District Judge.

These two cases present similar questions concerning the release of information supplied by J. H. Lawrence Company to the National Aeronautics and Space Administration (NASA) in connection with two different NASA contracts. Defendants moved for summary judgment in both cases, and Dickinson-Heffner, Inc. moved for summary judgment in the action in which it has intervened, C.A. No. J–82–361. Plaintiffs filed an opposition to both motions, and oral argument was heard on August 6, 1982.

The facts giving rise to this litigation are largely undisputed. In December 1978 Lawrence submitted a bid on a NASA contract for minor construction, alteration and repairs. It supplied, as required, a unit of work and prices (UWP) schedule, giving its unit prices on some 2,000 contract items. Lawrence advised NASA that it wanted the UWP materials kept confidential but was told that NASA considered the information to be in the public domain because the bid was a public bid. Lawrence was awarded the contract, but no requests for information were immediately filed. After NASA advised Lawrence in November 1981 that it intended to honor a FOIA request for disclosure of Lawrence's UWP schedule, Lawrence filed Civil Action No. J–81–2993. Disclosure by NASA was, by agreement, enjoined.

Lawrence submitted a bid in the fall of 1981 on a similar NASA contract, again supplying a UWP schedule. It was awarded the contract. After being told in February 1982 that a FOIA request for its UWP schedule had been filed, Lawrence filed Civil Action No. J–82–361. Disclosure was again enjoined. The requesting party, Dickinson-Heffner, was permitted to intervene.

The material with which these lawsuits are concerned deserves more detailed description. The actual material has not been submitted to the Court, but the parties agree sufficiently on its nature to permit discussion of the legal issues presented by the motions. The invitation for bids (IFB) in both instances required the submission of individual line item prices on over 2,000 contract items in support of the overall bid. The UWP schedule consists of whole number prices for all items. For example, an item price for hand excavation of soil might be shown as $13.39 per cubic yard. The parties agree that the mathematical formula for calculation of this line item would be: wage rate per hour × efficiency (work performed per hour) + overhead and profit. Other line items must include the cost of materials, as well as the other factors. The formula and calculations are not shown on the UWP schedule; there is simply a price given for each item. Lawrence contends, however, that its profit and overhead is readily calculable from the line items because the formula and other factors are known, or readily ascertainable, by competitors. It thus contends that the UWP schedule is protected from disclosure because it reveals trade secrets, or confidential financial information.

The defendants contend primarily that the information is required to be disclosed upon request because it was supplied as a part of a public bid. They also contend, as does the intervenor, that the UWP schedule is not a protected trade secret because it does not reveal on its face Lawrence's profit and because that information is not so readily calculated as Lawrence contends.

The trade secret question underlying these cases is presented here in the context of "reverse Freedom of Information Act" suits. Analysis of the legal issues begins with *Chrysler Corporation v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). The Supreme Court's holdings can be summarized as follows:

1. A party seeking to bar an agency's disclosure of information he has supplied has no cause of action under FOIA, *id.* at 294, 99 S.Ct. at 1713–14, or the Trade Secrets Act, *id.* at 316–17, 99 S.Ct. at 1724–25, but he may seek review of the agency action under the Administrative Procedure Act, *id.* at 317, 99 S.Ct. at 1725. A disclosure made in violation of the Trade Secrets Act is "not in accordance with law" within

the meaning of the APA. *Id.* at 318, 99 S.Ct. at 1726.

2. The Trade Secrets Act, 18 U.S.C. § 1905, bars disclosure of covered material unless disclosure is otherwise authorized by law. FOIA itself does not constitute such authorization, if the material falls within exemption (b)(4) of that Act. *Id.* at 303–04, 99 S.Ct. at 1718–19. In *General Motors Corp. v. Marshall*, 654 F.2d 294, 296–97 (4th Cir. 1981), the United States Court of Appeals for the Fourth Circuit determined that FOIA exemption (b)(4) and the Trade Secrets Act are to be treated as coextensive for disclosure purposes. Material exempt from disclosure under (b)(4) is within the Act.

3. Authorization for disclosure may be found in a statute or in some regulations. A federal regulation that meets certain criteria may constitute authorization for Trade Secrets Act purposes. It must be substantive, not procedural, *Chrysler Corp.*, 441 U.S. at 301–02, 99 S.Ct. at 1717–18; must be promulgated pursuant to a statutory grant of quasi-legislative authority, *id.* at 302–03, 99 S.Ct. at 1717–18; and pursuant to the procedural requirements of the APA, *id.* at 303, 99 S.Ct. at 1718. With respect to the second criterion, there must be a "nexus between the regulations and some delegation of the requisite legislative authority by Congress." *Id.* at 304, 99 S.Ct. at 1719.

The first step in analysis is to determine whether the UWP is covered by FOIA Exemption (b)(4) and the Trade Secrets Act. The FOIA exemption applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The information involved in this case is not a trade secret, such as technical information or a customer list, *see, e.g., Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C.Cir.1982) (technical information); *Audio Technical Services v. Department of Army*, 487 F.Supp. 779, 782 (D.D.C.1979) (customer lists, employees' histories), but it arguably constitutes information within the second category of (b)(4).

There is no dispute that the information is commercial or financial and that it was obtained from a person. The real question is whether it is confidential.

■ The courts have adopted a two-pronged test for determining whether information is "confidential." The Fourth Circuit has indicated its agreement with other circuits. *General Motors Corp.*, 654 F.2d at 297 n. 8 (noting two cases as providing "informative" and "well-reasoned" discussions of the scope of the exception). To be confidential, the information must have the effect of (1) impairing the Government's ability to obtain necessary information in the future *or* (2) causing substantial harm to the competitive position of the supplier of the information. *American Airlines, Inc. v. National Mediation Bd.*, 588 F.2d 863, 871 (2d Cir. 1978); *cf. Gulf & Western Industries, Inc. v. United States*, 615 F.2d 527 (D.C.Cir.1979) (applying competitive harm test only). The information must be of a type not normally made public. *Id.* at 530.

The first test is not at issue here. The Government is willing to disclose the UWP schedule and obviously believes its ability to obtain this kind of information in the future will not be impaired by disclosure.

The question is whether release of the information will cause substantial harm to Lawrence's competitive position. Actual cost and rate data has been held to come within (b)(4). *E.g., Gulf & Western Industries, Inc. v. United States*, 615 F.2d 527 (D.C.Cir.1979). A few cases have dealt with or mentioned release of cost or pricing data before award of a contract, *Audio Technical Services v. Department of Army*, 487 F.Supp. 779, 782 (D.D.C.1979) (distinguishing cost proposal from bid information sought there); *Shermco Industries, Inc. v. Secretary of Air Force*, 452 F.Supp. 306, 323–24 (N.D.Tex.1978), *rev'd on other grounds*, 613 F.2d 1314, 1317 (5th Cir. 1980), and have apparently assumed that bid price or cost information was disclosable after the contract was awarded, *see Shermco Industries*, 613 F.2d at 1317, 452 F.Supp. at 324. That question was not decided, however, and these are FOIA cases.

■ To show a likelihood of substantial competitive harm, actual competition and the likelihood of substantial competitive injury are to be shown. *Gulf & Western*, 615 F.2d at 530. There is no question that there is actual competition here. Lawrence competes with the requesters of information and other bidders. Lawrence contends that if the unit prices are released, its competitors will be able to calculate its overhead or profit and, using that factor, estimate and undercut its future bids. The ability to undercut bids was held to constitute sufficient "likelihood of substantial competitive injury" where actual costs, rates, and profits were involved in the disclosure. *Gulf & Western*, 615 F.2d at 530–31.

■ The item prices do not actually reveal the plaintiff's underlying profit or overhead data. Although the affidavit of Mr. Lawrence explains how a competitor could calculate the information using standard sources, even his affidavit indicates that the calculation is not certain. For example, although he refers to standard references giving efficiency factors, he also notes that he might be using a different efficiency factor, based on his own experience. It cannot be determined as a matter of law that this information is not confidential information or a trade secret, in light of the support advanced in Lawrence's affidavit, nor can it be determined that the information is confidential. In addition, factors such as the staleness of the information affect whether its disclosure is likely to cause competitive harm. *Cf. Timken Co. v. U. S. Customs Service*, 491 F.Supp. 557 (D.D.C.1980) (unit price data supplied to Customs Service held within exemption (b)(4)), (*Timken I*); 531 F.Supp. 194 (D.D.C. 1981) (*Timken III*) (recent information within exemption (b)(4)). There are sufficient issues of material fact to preclude summary judgment on the protected nature of the information itself.

■ That may not be material, however, if, regardless of its status, disclosure of the UWP schedule is "otherwise authorized by law." There is no specific statutory provision governing disclosure. The statute governing military procurement, 10 U.S.C. § 2305(c), which applies to NASA, *id.* § 2303(a)(5), provides: "Bids shall be opened publicly at the time and place stated in the advertisement." The NASA statute contains a provision on release of information: "information obtained or developed by the Administrator in the performance of his functions under this chapter shall be made available for public inspection, except (A) information authorized or required by Federal statute to be withheld. . . ." Neither statute authorizes disclosure, since the second one refers back to other provisions. It might be argued that the statutory provision that bids are to be opened publicly implicitly authorizes disclosure, or the promulgation of disclosure regulations, but that language is significantly different from statutes that have been found to authorize disclosure regulations, for example, the provision of the Social Security Act relied upon in *Humana of Virginia v. Blue Cross of Virginia*, 622 F.2d 76 (4th Cir. 1980).

NASA relies on 41 C.F.R. § 2.402–1 (1979), which governs the opening of bids. It provides, in pertinent part, that when the time set for bid opening arrives, "all bids received prior to the time set for opening shall then be publicly opened, and, when practicable, read aloud to the persons present, and be recorded. If it is impracticable to read the entire bid, as where many items are involved, the total amount of the bid shall be read, if feasible." 41 C.F.R. § 2.402–1(a). The same section also provides, "Examination of bids by interested persons shall be permitted if it does not interfere unduly with the conduct of Government business." *Id.* § 2.402–1(c).

It is questionable whether these provisions can be read, as the Government contends, as authorizing disclosure of confidential information contained in bids. Elsewhere in the NASA procurement regulations a general policy of keeping information in proposals confidential to the extent permitted by law is stated. 41 C.F.R. 18–1.-304–2(d)(1)(C).

This regulation fails the three-part test of *Chrysler Corporation.* The procurement regulations generally may have some substantive aspects, but this particular provision is procedural. The regulations are not subject to the substantive rulemaking provisions of 5 U.S.C. § 553. 5 U.S.C. § 553(a)(1). Most important, the required nexus between a grant of quasi-legislative authority and the rule, to give the regulation the "force and effect of law," is not present. Unlike military departments, for example, *see* 10 U.S.C. § 2381, specific authorization to promulgate procurement regulations is not contained in the NASA statute. The Administrator has a general authority to promulgate regulations under a "housekeeping" provision, 42 U.S.C. § 2473(b)(1), and specific authority under the Act to promulgate regulations for waiver and licensing of the Government's rights with respect to inventions, 42 U.S.C. § 2457(f), (g); and for NASA employees' and contractors' financial reports, *id.* § 2462(b). The grant of a general authority to carry out his functions may be read as authority to promulgate practice requirements in procurement matters but not to the extent that those regulations are read as authorizing the release of information required to be kept confidential.

For the foregoing reasons, it cannot be said as a matter of law that disclosure of the information involved is authorized under the Trade Secrets Act. The motions for summary judgment must be denied because, as previously noted, questions of fact exist concerning whether the information qualifies as confidential information.