The TIMKEN COMPANY, Plaintiff,

v.

UNITED STATES CUSTOMS SERVICE et al., Defendants.

Civ. A. No. 79–1225.

United States District Court, District of Columbia.

June 18, 1980.

**11.** A stay would also abort plaintiff's efforts towards effectuating service on Iran.

Eugene L. Stewart, Washington, D. C., for plaintiff.

Patricia J. Kenney, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 in which plaintiff Timken Company, a manufacturer of roller bearings, seeks disclosure of documents in the possession of defendant Customs Service relating to the determination of appraised value, for customs duty assessment purposes, of tapered roller bearings and components imported from Japan. Eleven documents which are responsive to plaintiff's request have been released, while two documents have been partially withheld and one entirely withheld based on Exemptions 4, 5 and 7(A) of the FOIA, 5 U.S.C. § 552(b)(4), (5) and (7)(A). This matter came on for hearing before the Court on the parties' cross-motions for summary judgment on January 29, 1980. After considering the arguments of counsel, the Court ordered submission of the allegedly exempt documents for an *in camera* inspection. The Court has reviewed these documents to determine whether the agency has carried its burden of establishing the claimed exemptions.

The documents at issue are reports generated by the Customs Service in its valuation of imported roller bearings from Japan as part of its responsibility to assess customs duties pursuant to 19 U.S.C. § 1202. The applicable law and decisions require that bearings be valued for assessment of ordinary duty at foreign or export value and, if both are known, at the higher of the two. This value is determined by a Customs officer based on confidential commercial information supplied by the importer. 19 U.S.C. § 1402(a)(1), (2), (3) and (4); Treasury Decision 54521. In some instances, however, when the Customs officer suspects that all the proper information has not been supplied to him by the importer for his value determination, he may reject the invoice value in assessing the duty and instead commence a value investigation.

Documents Nos. 9 and 11 which have been released in part, are each one-page documents entitled "Report of Classification and Value" prepared by Customs officials from confidential commercial information provided by the importer, American Koyo Corporation ("AKC"), as required by law. 19 C.R.F. 141.61, 141.83, 143.1 (1979). Document No. 10, withheld in its entirely, is an eleven-page report prepared by the Customs office in Japan, as part of an ongoing investigation to determine the statutory value of various tapered roller bearings and components sold in the Japanese home market and to determine possible noncompliance with Section 402a of the Tariff Act of 1930, 19 U.S.C. § 1402.

The defendants have claimed that these three documents are either partially or completely exempt from disclosure under Exemptions 4, 5 and 7(A) of the FOIA. Because of its resolution of the issues under Exemption 4, the Court need not consider the applicability of Exemptions 5 and 7(A).

I

Exemption 4 exempts from mandatory disclosure trade secrets and commercial or financial information which is obtained from a person outside the government and is privileged or confidential. 5 U.S.C.

§ 552(b)(4).[1] The plaintiff concedes that the withheld material is commercial or financial information and that it was obtained from a person,[2] but it argues that the information is not "confidential" within the meaning of Exemption 4. The government, on the other hand, contends that disclosure of the three documents would reveal sensitive marketing and pricing information, would impair Customs' ability to obtain necessary information in the future, and is therefore "confidential" within the meaning of the FOIA.

Information is considered confidential for the purposes of the exemption if disclosure is likely to (1) impair the government's ability to obtain necessary information in the future or (2) to cause substantial harm to the competitive position of the entity from whom the information was received. *National Parks and Conservation Ass'n, supra* at 770; see also *Gulf & Western Industries v. United States, supra* at 530. In order to show that disclosure would cause substantial competitive harm to the entity, the agency seeking to avoid disclosure need not prove that actual competitive harm has or will result from disclosure. *Gulf & Western Industries v. United States, supra* at 530; *National Parks and Conservation Ass'n v. Kleppe,* 547 F.2d 673, 679 (D.C.Cir.1976). The Court concludes that the defendant has met this burden of proof both with respect to the material deleted from Documents 9 and 11 and the complete withholding of Document No. 10.

## II

The information in Documents Nos. 9 and 11 was furnished by American Koyo Corporation (AKC), an American importer of tapered roller bearings from a Japanese manufacturer, Koyo Seiko. Customs claims that the price and quantity data withheld would cause competitive injury to both the importer AKC and the exporter Koyo Seiko because it would allow their competitors and customers to estimate the company's profit margin and production costs, thereby giving competitors insight into the company's competitive strengths and weaknesses.[3] Affidavits submitted by the government explain that release of the unit price data may allow the competition to approximate the production costs of Koyo and the profit margin of AKC for its roller bearings since the sales involved are between the parent company and its subsidiary. Plaintiff, to be sure, argues that the competitive harm to the manufacturer and importer is speculative because (1) the information is outdated and therefore useless in determining marketing plans in 1980 and because (2) release of the unit price would not, in itself, enable the plaintiff to compute the cost of production or the profit margin.[4] These arguments are unpersuasive.

First, although the price data concerned the sale of roller bearings in 1977, the plaintiff and other competitors could make projections of Koyo's current and future cost and prices based on this same information. Second, even if the price data would be insufficient, standing by itself, to allow computation of the cost of production, this cost would be ascertainable when coupled with other information either possessed by plaintiff or sought by plaintiff in other

1. *Gulf & Western Industries, Inc. v. United States,* 615 F.2d 527 (D.C.Cir.1979); *National Parks and Conservation Ass'n v. Morton,* 498 F.2d 765 (D.C.Cir.1974).

2. Under the FOIA, "person" is defined to include individuals, partnerships, corporations or associations. 5 U.S.C. § 551(2).

3. The government also contends that the information withheld is exempt because exporters and importers would not ordinarily release this type of information and that therefore disclosure would impair the government's ability to obtain such information in the future. The Court does not base its ruling on the applicability of Exemption 4 on this rationale. The deleted data is information which the importer is required by law to file with the Customs Service as a requisite to purchasing imported goods, and thus, disclosure is unlikely to hinder Customs' ability to gather such data in the future.

4. Plaintiff asserts that in order to compute Koyo's cost of production, it would also need to know the relationship of the transfer price to the cost of production of the part numbers involved.

pending FOIA actions.[5] In *Carlisle Tire and Rubber Company*, C.A. No. 78–2001 (D.D.C.1979) (on appeal) the Court in response to an argument that release of undisclosed financial information would not in itself threaten competitive injury, held that the plaintiff had independent sources of information which it could use to complete a financial picture of its competitors and thus, the undisclosed material was confidential under Exemption 4. *Id.* at 8.

The Court concludes that the suppliers of information face actual competition in the American market and that the deleted information is of a nature that, if disclosed, would likely result in substantial competitive injury to the suppliers of that information to defendants.[6]

### III

■ Document No. 10 is the Report of Investigation resulting from the statutory value investigation conducted to determine the foreign value of roller bearings. The document contains a list of Koyo Seiko's exported bearings, their prices for various years, and an outline of its distribution network and sales, including prices and discount formulas. In addition, the document also contains information supplied by unrelated Japanese distributors of roller bearings, such as quantities and values of roller bearings sold to customers, the amount and number of quantity discounts, terms of sales, costs and charges incurred in selling on the Japanese market and a list of United States purchasers and terms of sales. The government has entirely withheld this document based on Exemption 4, claiming that the information is confidential because its release would cause competitive injury to the submitters of the material.

The affidavits submitted by the government adequately establish that release of the information would threaten competitive injury through revealing competitive strengths, weaknesses and the marketing strategy of Koyo companies and its distributors. If in possession of these materials, competitors could modify their own marketing strategy and selectively underprice Koyo to obtain a greater market share in Japan. In addition, disclosure of the information supplied by Koyo's distributors would be likely to cause substantial business harm to these distributors through enabling competitors to undercut the distributors' prices on certain models and weaken their overall profits through concentrating competition on their higher-profit bearings. In *Gulf & Western Industries, supra* the Court held that release of information similar to that supplied by Koyo and its distributors such as the company's profit rate, actual loss data and cost data would allow competitors to determine the company's pricing structure and undercut its bids and therefore, would likely cause substantial competitive harm.

In view of the highly competitive Japanese market for roller bearings, and the type, specificity, and extensiveness of the financial and marketing information submitted by Koyo and its distributors, there exists a likelihood of serious competitive injury if Document No. 10 were to be released.

5. Plaintiff has filed several other cases seeking information similar to that requested in this action. *See Timken v. U. S. Customs Service*, C.A. 79–2545 (filed September 25, 1979); *Timken v. U. S. Customs Service*, C.A. 79–1736 (filed July 5, 1979); and *Timken v. Blumenthal*, C.A. 79–473 (filed February 7, 1979).

6. Plaintiff also contends that the government's affidavits fail to show that Exemption 4 was properly invoked because they contain only generalized assertions and conclusory statements rather than specific factual or evidentiary material, citing *Pacific Architects and Engineers, Inc. v. The Renegotiation Board*, 505 F.2d 383 (D.C.Cir.1974). The Court in *Pacific Architects* required more than generalized allegations of confidentiality in order to insure an adequate record for meaningful appellate review and to enable the party seeking disclosure to contradict the government's description of the information withheld. *Id.* at 384–85. The material contained in the affidavits of Donald W. Lewis and Mevlin M. Cox is sufficiently detailed to allow adequate review and permit the fair assertion of plaintiff's rights. Moreover, the Court in *National Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673 (D.C.Cir. 1976) held that *Pacific Architects* did not require a detailed economic analysis of the competitive environment to satisfy a claim of competitive injury under Exemption 4.

Additionally, Document No. 10 is exempt from disclosure on the basis that its release would impair the government's ability to obtain similar information in the future. In his affidavits, Donald W. Lewis, Director of the Office of Regulations and Ruling of the United States Customs Service, has asserted that Customs relies on the voluntary cooperation of foreign companies to obtain sensitive business information necessary to compute and assess duties on goods imported into the United States. Further, the Customs Service argues that disclosure of such sensitive information may deter foreign companies from supplying similar information essential for other purposes, such as assessment of special dumping duties under the Anti-Dumping Act, 19 U.S.C. §§ 160-73.

The plaintiff contends in response that the government is not totally reliant on the information submitted by foreign companies because there are alternative methods of valuation under the Customs laws other than "foreign value." Plaintiff's contention suffers from two defects. First, alternative methods of valuation likewise require for their efficacy on the submission of sensitive commercial information from foreign companies. See Lewis Affidavit ¶ 11. Second, although the Treasury may set countervailing duties without the information submitted in the course of a countervailing duty investigation, where the information is derived from the most comprehensive and accurate sources of that information, the government is entitled to promise confidentiality to protect these sources. See *Carlisle Tire and Rubber Co. v. U. S. Customs Service, supra* at 6.

Plaintiff further argues that the government is not dependent upon the voluntary compliance of foreign companies because (1) Customs is able to impose substantial monetary and criminal sanctions on importers in order to coerce submission of information and (2) the privilege of marketing foreign merchandise in the U. S. is contingent upon compliance with the U. S. tariff laws. This argument, however, ignores the Customs' need for information from foreign concerns other than the importing or exporting company. In the present case, the Customs Service gathered information from at least four distributors of Koyo roller bearings who were not involved in the export of tapered roller bearings under investigation. It is not likely that the threat of exclusion from the U. S. market would compel such sources to submit information in the absence of guarantees of confidentiality. Moreover, the FOIA does not require imposition by the Customs Service of criminal and monetary sanctions on the importers of merchandise to coerce compliance when voluntary compliance could be obtained through assurances of confidentiality. See *Carlisle Tire and Rubber Co. v. Customs Service, supra* at 6.

The Court concludes that Customs is likely to have substantial difficulty in obtaining sensitive information from foreign concerns for purposes of foreign value investigations, investigations under the Antidumping Act and other assessments in the future if the information in Document No. 10 were released. This Document and the information therein is therefore "confidential" within the *National Parks* test and exempt from disclosure under the FOIA.

Accordingly, it is this 18th day of June, 1980,

ORDERED That the defendants' motion for summary judgment be and it is hereby granted.