**The TIMKEN COMPANY, Plaintiff,**

v.

**U. S. CUSTOMS SERVICE, et al., Defendants.**

**Civ. A. No. 79–2545.**

United States District Court, District of Columbia.

Feb. 26, 1981.

On Motion For Reconsideration April 23, 1981.

---

Eugene L. Stewart, Washington, D. C., for plaintiff.

Patricia J. Kenney, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This action arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq.* Plaintiff seeks access to records of the United States Customs Service (USCS) concerning its investigation of the value of tapered roller bearings and components imported from Japan. The materials in question have been withheld from plaintiffs on the basis of Exemptions 2, 4, 5 and 7(A) of

the FOIA, 5 U.S.C. § 552(b)(2), (4), (5) and 7(A). Plaintiff does not contest the documents withheld pursuant to Exemption 2.

Eighty-three documents were initially located by USCS. Fifty-six documents remain in issue. Twenty-four documents have been withheld entirely, while thirty-two documents have been withheld in part. USCS compiled the documents in connection with its responsibility to value the imported merchandise, tapered roller bearings, and assess customs duties pursuant to 19 U.S.C. § 1402. Imported roller bearings must be valued for assessment of ordinary duty at foreign or export value and, if both are known, at the higher of the two. This value is usually determined by a Customs officer based on commercial information supplied by the importer. 19 U.S.C. § 1402(a)(1), (2), (3) and (4): Treasury Decision 54521. In rare instances, however, including the present case, when the Customs officer suspects that all the proper information has not been supplied to him by the importer for his value determination, he may commence a value investigation.

The case is currently before the Court on cross-motions for summary judgment. The Court releases in part and withholds in part the documents claimed exempt pursuant to 5 U.S.C. §§ 552(b)(4) and 7(A), and withholds in total the documents claimed exempt pursuant to 5 U.S.C. § 552(b)(5).

### 1. *Exemption 4*

USCS has withheld the vast bulk of the documents pursuant to Exemption 4. Exemption 4 protects from mandatory disclosure trade secrets and commercial or financial information which is obtained from a person outside the government and is privileged or confidential. *Gulf & Western Industries, Inc. v. United States*, 615 F.2d 527, 529 (D.C.Cir.1979). Plaintiff concedes that the documents were obtained from a person, are commercial or financial information within the meaning of Exemption 4, and were not privileged. The disputed issue is whether or not the documents contain confidential information.

■ Commercial or financial matter is confidential within the meaning of Exemption 4,

> if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future, or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

*National Parks and Conservation Ass'n. v. Morton*, 498 F.2d 765, 770 (D.C.Cir.1974).

The information withheld pursuant to Exemption 4 contained detailed financial and commercial information about the pricing and marketing of Japanese tapered roller bearings for the time period 1968 to 1976. Specifically, it includes (1) value determinations by the U.S. Customs officers of imported tapered roller bearings, (2) invoice unit prices and total invoice prices of bearings sold at home and for export to the United States, (3) quantities of bearings sold at home and for export to the United States, (4) customs duty amounts calculated for sales of bearings, and (5) pricing practices and policies and marketing channels of Japanese manufacturers regarding export sales to the United States and home sales.

The USCS asserts that the release of this material is likely to cause substantial harm to the competitive positions of the companies from whom the information was obtained. Competitors could selectively underprice these companies, estimate profit margins and the supply and marketing weaknesses of these companies and target their weak points for attack. Customers could use the information relating to sales to other customers as leverage to obtain lower prices or increased discounts. The USCS supports its position with an affidavit from a Japanese exporter and letters from the counsel of the Japanese company and their related American importers of tapered roller bearings.

Plaintiff argues that this information is too antiquated and fragmented to be of competitive significance as over 75% of it concerns data from the period 1968–1973.

The Court finds the arguments of the Japanese manufacturers are valid. It notes, however, that the affidavit and letters presented were prepared originally for other FOIA suits[1] which Timken has filed and pertain to commercial and financial data from 1973 and 1975 to 1979.[2] USCS has not met its burden of proof to establish that the pre-1973 data warrants protection.

Furthermore, the economic changes in the last decade have been far-reaching, encompassing changes in the overall economic market due to fluctuating exchange rates and the inflationary spiral and in the specific roller bearing market. Marketing strategies and the costs of production in the roller bearing market have been varied. These changes make information from the late

---

1. Timken has filed at least three other suits asking for similar information: *Timken Co. v. U.S. Customs Service*, 491 F.Supp. 557 (D.D.C. 1980); *Stewart v. U.S. Customs Service*, C.A. 78–2220 (D.D.C. Feb. 9, 1981); and *Timken v. U.S. Customs Service*, C.A. 79–1736 (D.D.C., filed July 5, 1979).

2. USCS presented three letters from counsel of Japanese companies and one affidavit from the senior manager director of a Japanese company pertaining to *Timken Company v. U.S. Customs Service, et al*, C.A. 79–1736 (D.D.C., filed July 5, 1979) (*Timken II*), and one letter from the counsel of a Japanese company pertaining to *Timken Co. v. U.S. Customs Service*, 491 F.Supp. 557 (D.D.C.1980) (*Timken I*).

*Timken I* concerned a nearly identical FOIA request to the instant one, except that it requested data obtained in the USCS's valuation investigation from 1976 to 1979. On June 18, 1980, the Court withheld the information requested on the basis of Exemption 4. *Timken II* concerns a FOIA request for documents collected in the course of an anti-dumping investigation by USCS of the roller bearing market. This Court has examined the Vaughn Index submitted in *Timken II* and determined that the information collected concerns business and financial data for the years 1973 through 1979. That case is currently before J. Johnson on cross-motions for summary judgment.

Mr. Lewis, the USCS official who submitted the Vaughn Index, stated also that the disclosure of the data in issue would severely harm the competitive positions of the companies who provided it. His justifications for his statement, however, "were derived primarily" from the above-described letters and affidavit. Vaughn Index, ¶ 26.

1960's and early 1970's, which was originally quite sensitive business data, of marginal value in the 1980's. For a company to base its plans on projections from 1970 data would probably be ineffective and perhaps harmful. Accordingly, the Court finds that it is not likely that release of the pre-1973 information would cause substantial harm to the competitive position of the companies from which it was obtained.

█ The second prong of the confidentiality test is whether the release of the information at issue would be likely to impair the government's ability to obtain necessary information in the future. USCS relies in large part on the voluntary cooperation of foreign manufacturers to supply them with the business and financial information which they need for valuation and other investigations. In order to obtain this information easily, it is USCS's custom to keep the information confidential. The government is entitled to promise confidentiality of sensitive commercial information. *Timken I, supra* 491 F.Supp. at 561; *Carlisle Tire and Rubber Co. v. U.S. Customs Service,* Civil Action Nos. 78–2001, 78–2002 and 79–0224 (D.D.C., Nov. 21, 1979), Slip op. at 6. The government should not be forced to enlarge its enforcement staff and to threaten foreign companies with the imposition of sanctions such as the seizure and forfeiture of goods, the closing of access to United States markets and contempt of court proceedings to obtain the information it needs.

█ The Court finds, therefore, that the release of current information would be likely to cause substantial competitive harm if released and is likely to impair the ability of USCS to obtain such information in the future.

Finally, the Court has examined the Vaughn Index and the partially disclosed documents. The Court concludes that USCS has met its burden to segregate disclosable and non-disclosable documents.[3]

In accordance with the above, the Court withholds the commercial and financial information pertaining to the time period starting after January 1, 1973 on the basis of both prongs of the confidentiality test of Exemption 4. The Court releases, subject to the validity of Exemptions 5 or 7(A) to be discussed *infra,* all the business data pertaining to the time period up to January 1, 1973.[4]

2. *Exemption 5*

██ Sixteen documents and portions of documents were withheld under Exemption 5. Exemption 5

authorizes the withholdings of records which are: Inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

It protects internal government documents, among other information, of a predecisional nature that would not routinely be disclosed to a private party through the discovery process in litigation with the agency. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149–150, n.16, 95 S.Ct. 1504, 1515–1516, n.16, 44 L.Ed.2d 29 (1974). In determining the scope of the exemption, courts distinguish "between predecisional memoranda prepared in order to assist an agency decision-maker in arriving at his decision, which are exempt from disclosure, and post decisional memoranda setting forth the reasons for an agency decision already made, which are not." *Renegotiation Board v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1974). The purpose of the exemption is to protect the quality of agency decisions. *NLRB v. Sears, supra,* 421 U.S. at 149–150, 95 S.Ct. at 1515–1516.

The documents in issue here are in large majority the opinions of the USCS officers on the proper statutory value to be applied to the tapered roller bearings and the anal-

---

**3.** The Court's finding on segregability extends to documents withheld pursuant to Exemptions 5 and 7(A) also.

**4.** Documents Nos. 19 and 21 are undated. USCS should try to determine to what time period they refer. If USCS cannot determine the dates, they shall release the documents.

ysis of and opinions and recommendations regarding the directions and results of foreign value investigations of the Japanese bearing manufacturers.

This material is predecisional. No statutory valuation of bearings has yet been made. The withheld material represents the thinking of USCS officers in the decisionmaking process of assessing the foreign value.

Additionally, a few documents include an evaluation of the merits of a complaint filed by Timken Co. charging that bearings from Japan were being appraised at prices which were too low. These documents also are clearly predecisional.

Accordingly, the Court withholds from disclosure all of the documents or portions of documents for which Exemption 5 is claimed. Specifically, the Court withholds in total documents Nos. 8, 9, 14, 28, 29 and 34, and withholds in part documents 12 (withhold opinions concerning proper statutory value), 16 (withhold opinions concerning proper statutory value and merits of Timken's petition), 24 and 25 (withhold from these two reports the USCS officers' conclusions regarding the existence of statutory values and their opinions and recommendations concerning the direction and results of the foreign value investigation, 26 and 27 (withhold summaries of the conclusions, opinions and recommendations set forth in the reports of items 24 and 25), 31 and 32 (withhold analyses of Report of Investigation described in Doc. 30, conclusions on the existence of statutory values, and opinions and recommendations regarding the direction of the foreign value investigation), 33 (withhold summaries of Docs. 31 and 32), and 35 (withhold the opinions and suggestions about the proper statutory value).

### 3. *Exemption 7(A)*

The final exemption claimed is 7(A) and concerns twenty documents and exhibits.[5] Under Exemption 7(A) of the FOIA, an agency may withhold

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings ... [5 U.S.C. § 552(b)(7)].

At the threshold, the Court determines that the documents are investigatory records, as they were produced as part of a USCS valuation investigation.

■ The documents were also "compiled for law enforcement purposes." Exemption 7(A) included within its ambit records compiled for law enforcement purposes which are civil or criminal in nature. *Rural Housing Alliance v. USDA*, 498 F.2d 73, 80 (D.C. Cir.1974). In the instant case, USCS suspected, with respect to shipments of bearings from Japan, that not all the proper value information had been provided by the importers. Accordingly, USCS did not and has not "liquidated" (the act of determining the amount of duty owed the United States) consumption entries for bearings. Instead, USCS undertook the unusual step of a value investigation to determine the statutory value of the imported merchandise. That investigation is ongoing. Even after value has been determined in accordance with 19 U.S.C. § 1402(a), and the entries have been liquidated, the proceedings may not be at an end. If an importer is dissatisfied with USCS's determination, then a protest may be filed within a specified time. 19 U.S.C. § 1514. Additionally, an importer may appeal an adverse decision to the U.S. Customs Court.

■ The last inquiry is whether release of the information would "interfere" with the government's case. USCS argues that disclosure would cause such interference because USCS would find it difficult in the future to obtain this kind of information. Relying on its reasoning on the Exemption 4 claim, the Court finds that there would be interference only for that information which it has found to be commercially sensitive. Accordingly, the Court withholds

5. Twenty-four documents were originally claimed under Exemption 7. Documents numbered 14, 28, 29 and 34 have been withheld pursuant to Exemption 5.

those documents or partial documents of the twenty-four in issue which contain commercial or financial information pertaining to the post-January 1, 1973 period.

In summary, the Court has held that documents numbered 1–7, 10, 15 and 17 be released in full, and documents numbered 8, 9, 13, 14, 18, 20, 28, 29 and 34 be withheld in full, and that documents numbered 11, 12, 16, 19, 21–27, 30–33, 35 and 36 be treated as follows:

| | |
|---|---|
| 11 | Withhold reports pertaining to the post-Jan. 1, 1973 period. |
| 12 | Withhold Ex. 5 material. |
| 16 | Withhold Ex. 5 material in May 6, 1971 letter. |
| 19 & 21 | Try to determine date of material. If that is not possible, release documents. |
| 22 | Withhold pertinent two pages of the June 2, 1976 document. |
| 23 (Incl. Exhibits) | Withhold the commercial or financial information relating to the post-January 1, 1973 period. |
| 24 | Withhold the Ex. 5 material and information on the percentage amount of discounts granted by Koyo Seiko's distributors pertaining to the post-January 1, 1973 period. |
| 25 | Withhold Ex. 5 material and the commercial or financial information pertaining to the post-January 1, 1973 period. |
| 26 & 27 | Withhold Ex. 5 material and the data on the percentage amount of discounts pertaining to the post-January 1, 1973 period. |
| 30 | Withhold any commercial or financial information pertaining to the post-January 1, 1973 period. |
| 31 & 32 | Withhold Ex. 5 material and any commercial or financial information pertaining to the post-January 1, 1973 period. |
| 33 | Withhold Ex. 5 material and the information on the percentage amount of discounts if it pertains to the post-January 1, 1973 period. |
| 35 | Withhold Ex. 2 and 5 information and any commercial or financial information pertaining to the post-January 1, 1973 period. |
| 36 | Withhold any commercial or financial information pertaining to the post-January 1, 1973 period. |

## ON MOTION FOR RECONSIDERATION

This matter is before the Court on defendants' motion for reconsideration of the decision of February 26, 1981 withholding in part and releasing in part records of the United States Customs Service (USCS) concerning its investigation of the value of tapered roller bearings and components imported from Japan. In its February 26 order, the Court released documents pertaining to the pre-January 1, 1973 period. The Court found that defendants had not met their burden of proof to establish that these pre-1973 documents contained material exempt pursuant to Exemptions 4 or 7 of the FOIA. 5 U.S.C. § 552(b)(4) and (7). Specifically, the Court found that the pre-1973 documents did not contain information whose release would be likely to cause substantial harm to the competitive position of the companies from which it was obtained, or would impair the government's ability to obtain similar information in the future.

Defendants have presented four new affidavits in support of their motion for reconsideration. These affidavits are written by executives of roller bearing companies who submitted the financial information to the USCS which is the subject of this lawsuit. As opposed to the affidavits submitted by defendants in support of their motion for summary judgment, these affidavits concern the particular information in dispute in this suit.

All four affiants assert substantial injury is likely to occur to their companies if the documents which the Court ordered released on February 26, 1981 are given to plaintiff. They make several compelling points:

(1) The pre-1973 information has commercial relevance today because it reveals distribution channels, market strategies, pricing structures and patterns of competition which have not changed significantly in the last decade.

(2) While competitors would not be wise to base their planning strategies for 1982 on this information alone, using it in conjunction with more current information could provide an accurate picture of today's marketing activities and competitive structure.

(3) The publication of the companies' confidential arrangements with their customers is likely to cause strenuous objections from those customers and disrupt customer relationships.

(4) The companies provided this information to USCS with the express understanding that it would remain confidential. If the information is released, these companies would be most reluctant to provide similar information to USCS in the future.

The Court finds these arguments persuasive. The release of the pre-January 1, 1973 information is likely to cause the same type of injuries which the release of the post-January 1, 1973 information would cause. It would allow competitors to discern the strengths and weaknesses of the marketing strategies of these companies and target their weak points for attack. Competitors also could imitate the successful policies of these companies. Further, customer relations likely would be disrupted by the breach of confidentiality and increased competition from competitors. The Court is no longer persuaded by plaintiff's argument that this "old" information is too antiquated and fragmented to be of use. The Court finds that it is likely that release of the pre-1973 information would (1) cause substantial harm to the competitive position of the companies from which it was obtained, and (2) impair the government's ability to obtain similar necessary information in the future.

In accordance with the above reasoning, the Court withholds the pre-1973 information pursuant to Exemption 4. An appropriate order is attached hereto.

## ORDER

Upon consideration of the defendants' motion for reconsideration and the opposition thereto and the entire record herein, it is by the Court this 22nd day of April 1981,

ORDERED that defendants' motion is granted; it is further

ORDERED that this Court's order of February 26, 1981 is vacated to the extent that judgment was in part granted to the plaintiff and information in documents 1–7, 10–12, 15–17, 19, 21–27, 30–33, 35 and 36 was ordered released; it is further

ORDERED that judgment for the defendants is granted in that all documents subject to this suit have been lawfully and properly withheld; and it is further

ORDERED that this case is dismissed.