**NATIONAL PARKS AND CONSERVA-TION ASSOCIATION, Appellant,**

**v.**

**Rogers C. B. MORTON, Secretary, Department of the Interior, et al.**

**No. 73–1033.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 16, 1974.

Decided April 24, 1974.

Rehearing denied June 7, 1974.

Richard B. Wolf, Washington, D. C., with whom Victor H. Kramer and John F. Dienelt, Washington D. C., were on the brief for appellant.

Lawrence H. Wechsler, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry and Arnold T. Aikens, Asst. U. S. Attys., were on the brief for appellees. Earl J. Silbert, Washington, D. C., also entered an appearance for appellees.

Before BAZELON, Chief Judge, and WRIGHT and TAMM, Circuit Judges.

TAMM, Circuit Judge:

■ Appellant brought this action under the Freedom of Information Act, 5 U.S.C. § 552 (1970), seeking to enjoin officials of the Department of the Interior from refusing to permit inspection and copying of certain agency records concerning concessions operated in the national parks. The district court granted summary judgment for the defendant on the ground that the information sought is exempt from disclosure under section 552(b)(4) of the Act which states:

(b) This section does not apply to matters that are—

.  .  .  .

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential  .  .  .  .

In order to bring a matter (other than a trade secret) within this exemption, it must be shown that the information is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential. Getman v. NLRB, 146 U.S.App.D.C. 209, 450 F.2d 670, 673 (1971), *quoting* Consumers Union of United States, Inc. v. Veterans Administration, 301 F.Supp. 796, 802 (S.D.N.Y. 1969), appeal dismissed, 436 F.2d 1363 (2d Cir. 1971). Since the parties agree that the matter in question is financial information obtained from a person and that it is not privileged, the only issue on appeal is whether the information is "confidential" within the meaning of the exemption.

## I.

■ Unfortunately, the statute contains no definition of the word "confidential." In the past, our decisions concerning this exemption have been guided by the following passage from the Senate Report, particularly the italicized portion:

This exception is necessary to protect the confidentiality of information which is obtained by the Government through questionnaires or other inquiries, *but which would customarily not be released to the public by the person from whom it was obtained.* S.Rep.No. 813, 89th Cong., 1st Sess. 9 (1965) (emphasis added), cited in Sterling Drug, Inc. v. FTC, 146 U.S.App.D. C. 237, 450 F.2d 698, 709 (1971); Grumman Aircraft Engineering Corp. v. Renegotiation Board, 138 U.S.App.D.C. 147, 425 F.2d 578, 582 (1970). We have made it clear, however, that the test for confidentiality is an objective one. Bristol-Myers Co. v. FTC, 138 U.S.App. D.C. 22, 424 F.2d 935, 938, cert. denied,

400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970); *cf.* Benson v. General Services Administration, 289 F.Supp. 590, 594 (W.D.Wash.1968), aff'd, 415 F.2d 878 (9th Cir. 1969). Whether particular information would customarily be disclosed to the public by the person from whom it was obtained is not the only relevant inquiry in determining whether that information is "confidential" for purposes of section 552(b)(4). A court must also be satisfied that non-disclosure is justified by the legislative purpose which underlies the exemption. Our first task, therefore, is to ascertain the ends which Congress sought to attain in enacting the exemption for "commercial or financial" information.

■ In general, the various exemptions included in the statute serve two interests—that of the Government in efficient operation and that of persons supplying certain kinds of information in maintaining its secrecy. The Senate Report acknowledges both of these legislative goals:

> At the same time that a broad philosophy of "freedom of information" is enacted into law, it is necessary to protect certain equally important rights of privacy with respect to certain information in Government files, such as medical and personnel records. It is also necessary for the very operation of our Government to allow it to keep confidential certain material, such as the investigatory files of the Federal Bureau of Investigation.

S.Rep.No. 813, 89th Cong., 1st Sess. 3 (1965). Some of the exemptions serve

only one or the other of the two interests. The exemption for "inter-agency or intra-agency memorandums" is an example of an exemption intended to protect the orderly conduct of official business.[1] On the other hand, the exemption for "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" is clearly intended for the benefit of the individual from whom information is obtained.[2] The exemption with which we are presently concerned has a dual purpose. It is intended to protect interests of both the Government and the individual.

The "financial information" exemption recognizes the need of government policymakers to have access to commercial and financial data. Unless persons having necessary information can be assured that it will remain confidential, they may decline to cooperate with officials and the ability of the Government to make intelligent, well informed decisions will be impaired. This concern finds expression in the legislative history as well as the case law. During debate on a predecessor to the bill which was ultimately enacted, Senator Humphrey pointed out that sources of information relied upon by the Bureau of Labor Statistics would be "seriously jeopardized" unless the information collected by the Bureau was exempt from disclosure.[3] He was assured that such information was fully protected under the exemption as it then appeared.[4] Although the exemption now contains the additional qualifying words "commercial

---

1. 5 U.S.C. § 552(b)(5) (1970). The Report of the Senate Committee on the Judiciary enunciates the purpose of this exemption: "It was argued, and with merit, that efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'" S.Rep.No. 813, 89th Cong., 1st Sess. 9 (1965).

2. 5 U.S.C. § 552(b)(6) (1970). As to this exemption the Senate Report states: "The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will

involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." S.Rep.No. 813, 89th Cong., 1st Sess. 9 (1965).

3. 110 Cong.Rec. 17667 (1964).

4. *Id.* S. 1666 contained the following version of the exemption: ". . . trade secrets and other information obtained from the public and customarily privileged or confidential . . . ." S.Rep.No. 1219, 88th Cong., 2d Sess. 2 (1964).

or financial" the purpose of protecting government access to necessary data remains. As the Senate Report explains:

> This exception is necessary to protect the confidentiality of information which is obtained by the Government through *questionnaires or other inquiries*. . . .

S.Rep.No. 813, 89th Cong., 1st Sess. 9 (1965) (emphasis added). The House Report states with respect to section 552(b)(4):

> It would also include information which is given to an agency in confidence, since a citizen must be able to confide in his Government. Moreover, where the Government has obligated itself in good faith not to disclose documents or information which it receives, it should be able to honor such obligations.

H.Rep.No. 1497, 89th Cong., 2d Sess. 10 (1966), U.S.Code Cong. & Admin.News 1966 at 2427. This court has formulated a similar definition of the governmental interest protected by the exemption:

> This exemption is intended to encourage individuals to provide certain kinds of confidential information to the Government, and it must be read narrowly in accordance with that purpose.

Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1078 (1971).

Apart from encouraging cooperation with the Government by persons having information useful to officials, section 552(b)(4) serves another distinct but equally important purpose. It protects persons who submit financial or commercial data to government agencies from the competitive disadvantages which would result from its publication. The need for such protection was raised several times during hearings on S.

1666,[5] the predecessor of the bill which became law. As introduced, this bill contained no exemption for trade secrets or commercial or financial information. Among the witnesses who pointed out this deficiency was a representative of the National Association of Broadcasters who testified that broadcasters are required to file business information with the Federal Communications Commission which, if not exempt from public disclosure, could be exploited by competitors.[6] A member of the subcommittee which conducted the hearings raised the issue again with respect to Small Business Administration loan applications:

> I am thinking of a situation, for example, where the company couldn't qualify for funds, and they have exposed their predicament to the world and it might give competitors unfair advantage to know their weak condition at that time. I wonder if there might be some cases where it might be in the public interest if all the facts about a company were not made public.[7]

A representative of the Treasury Department added similar comments:

> We can see no reason for changing the ground rules of American business so that any person can force the Government to reveal information which relates to the business activities of his competitor.[8]

In each of these instances it was suggested that an exemption for "trade secrets" would avert the danger that valuable business information would be made public by agencies which had obtained it pursuant to statute or regulation.[9] A representative of the Department of Justice endorsed this idea at length:

> A second problem area lies in the large body of the Government's infor-

---

5. .The text of this bill, as introduced, appears in Hearings on S. 1666 Before the Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary, 88th Cong., 1st Sess. 1–2 (1964) (hereafter, *1963 Hearings*).

6. *Id.* at 89–90.

7. *Id.* at 102.

8. *Id.* at 174.

9. *Id.* at 91, 102, 187.

mation involving private business data and trade secrets, the disclosure of which could severely damage individual enterprise and cause widespread disruption of the channels of commerce. Much of this information is volunteered by employers, merchants, manufacturers, carriers, exporters, and other businessmen and professional people for purposes of market news services, labor and wage statistics, commercial reports, and other Government services which are considered useful to the cooperating reporters, the public and the agencies. Perhaps the greater part of such information is exacted, by statute, in the course of necessary regulatory or other governmental functions.

Again, not only as a matter of fairness, but as a matter of right, and as a matter basic to our free enterprise system, private business information should be afforded appropriate protection, at least from competitors.[10]

A particulary significant aspect of the latter statement is its recognition of a twofold justification for the exemption of commercial material: (1) encouraging cooperation by those who are not obliged to provide information to the government and (2) protecting the rights of those who must.

After the hearings, the bill was reported with amendments, one of which added the following exemption:

> . . . trade secrets and other information obtained from the public and customarily privileged or confidential . . . .

S.Rep.No. 1219, 88th Cong., 2d Sess. 2 (1964). Although the bill passed the Senate,[11] Congress adjourned before the House of Representatives had completed action. The bill was reintroduced in the Senate in the following session with only two changes in the fourth exemption:

> . . . trade secrets and commercial or financial information obtained from the public and privileged or confidential . . . .[12]

This version substitutes the words "commercial or financial" for the word "other" and deletes the word "customarily." No explanation was given for either change. During hearings on this bill, the question was again raised whether businessmen would be protected against disclosure of commercial or financial information obtained by the Government pursuant to administrative regulation. A witness testified that the Rural Electrification Administration requires detailed "financial, economic and technical" information from applicants under its loan program. Public release of this material, it was said, would provide an unfair advantage to a borrower's competitors.[13] In reply, a member of the subcommittee stated: "Well, there is a specific exemption in here to cover that point, and I do not think anybody has any intention that this material be made public."[14] After the hearings, the bill was reported with no significant amendment of the fourth exemption.[15] The explanation of the fourth exemption was ientical to that appearing in the Report on the previous bill except for the following significant addition:

> Specifically [the exemption] would include any commercial, technical, and financial data, submitted by an applicant or a borrower to a lending agency in connection with any loan application or loan.

10. *Id.* at 199.

11. 110 Cong.Rec. 17668 (1964).

12. S. 1160, 89th Cong., 1st Sess. (1965). The full text of this bill appears in Hearings on S. 1160 Before the Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary, 89th Cong., 1st Sess. 6–8 (1965).

13. *Id.* at 342.

14. *Id.* at 343.

15. The words "any person" were substituted for the words "the public" in order to convey the idea that "highly personal" information may be involved. S.Rep.No. 813, 89th Cong., 1st Sess. 1–2 (1965).

S.Rep.No. 813, 89th Cong., 1st Sess. 9 (1965). [16] This history firmly supports the inference that section 552(b)(4) is intended for the benefit of persons who supply information as well as the agencies which gather it.

█ To summarize, commercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; [17] or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

## II.

█ The financial information sought by appellant consists of audits conducted upon the books of companies operating concessions in national parks, annual financial statements filed by the concessioners with the National Park Service and other financial information. The district court concluded that this information was of the kind "that would not generally be made available for public perusal." [18] While we discern no error in this finding, we do not think that, by itself, it supports application of the financial information exemption. The district court must also inquire into the possibility that disclosure will harm legitimate private or governmental interests in secrecy.

On the record before us the Government has no apparent interest in preventing disclosure of the matter in question. Some, if not all, of the information is supplied to the Park Service pursuant to statute. [19] Whether supplied pursuant to statute, regulation or some less formal mandate, however, it is clear that disclosure of this material to the Park Service is a mandatory condition of the concessioners' right to operate in national parks. Since the concessioners are *required* to provide this financial information to the government, there is presumably no danger that public disclosure will impair the ability of the Government to obtain this information in the future.

█ As we have already explained, however, section 552(b)(4) may be applicable even though the Government itself has no interest in keeping the information secret. The exemption may be invoked for the benefit of the person who has provided commercial or financial information if it can be shown that public disclosure is likely to cause substantial harm to his competitive position. Appellant argues that such a showing cannot be made in this case because the concessioners are monopolists, protected from competition during the term of their contracts and enjoying a statutory preference over other bidders at renewal time. [20] In other words, appellant argues that disclosure cannot impair the concessioners' competitive position because they have no competition. While this argument is very compelling, we are reluctant to accept it without first providing appellee the opportunity to develop a fuller record in the district court. It might be shown, for example, that disclosure of information about concession activities will injure the concessioner's competitive position in a non-

---

16. The House Report contains a similar statement: "It would include information customarily subject to the . . . lender-borrower privileges such as technical or financial data submitted by an applicant to a Government lending or loan guarantee agency." H.Rep.No. 1497, 89th Cong., 2d Sess. 10 (1966), U.S.Code Cong. & Admin.News 1966, p. 2427.

17. We express no opinion as to whether other governmental interests are embodied in this exemption. *Cf. 1963 Hearings* at 200 where the problems of compliance and pro-

gram effectiveness are mentioned as governmental interests possibly served by this exemption.

18. National Parks and Conservation Ass'n v. Morton, 351 F.Supp. 404, 407 (D.D.C. 1972).

19. 16 U.S.C. § 20g (1970).

20. 16 U.S.C. § 20d (1970) establishes a preference in favor of the renewal of contracts or permits held by concessioners who have satisfactorily performed their obligations under prior contracts or permits.

concession enterprise. In that case disclosure would be improper. This matter is therefore remanded to the district court for the purpose of determining whether public disclosure of the information in question poses the likelihood of substantial harm to the competitive positions of the parties from whom it has been obtained. If the district court finds in the affirmative, then the information is "confidential" within the meaning of section 552(b)(4) and exempt from disclosure. If only some parts of the information are confidential, the district court may prevent inappropriate disclosures by excising from otherwise disclosable documents any matters which are confidential in the sense that the word has been construed in this opinion.

The judgment of the district court is reversed and this matter is remanded for further proceedings consistent with this opinion.

So ordered.