**MILLER, ANDERSON, NASH, YERKE & WIENER, a partnership, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF ENERGY et al., Defendants.**

Civ. No. 79–738.

United States District Court, D. Oregon.

June 17, 1980.

---

**16.** *See* text acc. n. 13 *supra.*

Douglas M. Ragen, Miller, Anderson, Nash, Yerke & Wiener, Portland, Or., for plaintiff.

Asst. U. S. Atty. Thomas C. Lee, Portland, Or., for defendants.

## ORDER

JAMES M. BURNS, District Judge.

IT IS ORDERED that the order of Magistrate Edward Leavy issued May 22, 1980, is hereby adopted as the opinion of the court.

EDWARD LEAVY, Magistrate.

■ Plaintiff, Miller, Anderson, Nash, Yerke and Wiener, a partnership, brings this action under the Freedom of Informa-tion Act, 5 U.S.C. § 552, to enjoin defendant Bonneville Power Administration (BPA) and the other defendants from withholding from public disclosure certain records. Plaintiff having exhausted its administrative remedies, this court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B). The action is presently before the court on the parties' cross–motions for summary judgment. The parties have consented that these motions may be decided by a Magistrate.

## I

The sole remaining document at issue in this action is a ten page memorandum dated June 9, 1978, and entitled "Trojan/Bechtel Agreement." It is authored by Merrill G. Emerick, an attorney with the law firm of Phillips, Coughlin, Buell, Stoloff and Black, attorneys for Portland General Electric, and is directed to H. H. Phillips, Portland General Electric's general counsel. In order to understand my resolution of this action, it is necessary to understand how and why the document came into the possession of BPA.

Portland General Electric (PGE) is an investor owned utility in Oregon. PGE contracted with the Bechtel Corporation for the construction of the Trojan Nuclear Plant. At the present time Trojan is a completed, operating nuclear power plant. Defendant BPA is a power marketing agency of the United States Department of Energy. Through complicated contractual arrangements not relevant to this action, BPA is entitled to 30% of the electrical power which Trojan generates.

In March, 1978, it was discovered that there were certain design errors in the walls of Trojan's control building, such that the control building did not conform to criteria set forth in the Final Safety Analysis Report for the facility. This discovery led to an investigation by the Nuclear Regulatory Commission, which ultimately resulted in Trojan being shut down and, therefore, not producing power for a number of months. As a result of this shutdown, PGE had to purchase replacement power and

must incur costs to repair the design defects. In February, 1979, PGE brought an action against Bechtel Corporation, alleging that it failed to properly construct the Trojan plant.

BPA obtained the document at issue in order to assist it in reaching a decision on whether or not to intervene in the litigation brought by PGE against Bechtel Corporation. Although the memo was prepared by PGE's attorney for use by PGE in making its decision on whether to bring the action against Bechtel, it was also useful to BPA in making its decision on whether to intervene, because for many purposes of the litigation BPA and PGE are in very similar situations.

## II

Defendants contend that both 5 U.S.C. § 552(b)(4) and 5 U.S.C. § 552(b)(5) exempt the document from the general disclosure requirements of the Freedom of Information Act. Section 552(b)(4) provides in part that the disclosure requirements do not apply to matters that are "commercial or financial information obtained from a person and privileged or confidential." Therefore, in order to be exempted by this portion of the sub-section a document must: 1) contain commercial or financial information; 2) have been obtained from a person; and 3) contain information of a confidential or privileged nature. *American Airlines, Inc. v. National Mediation Board*, 588 F.2d 863 (2nd Cir. 1978); *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir.1974). The parties agree that the PGE memo was obtained from a person; however, they disagree as to whether the document "contains commercial or financial information" and as to whether the information is of a "privileged or confidential" nature.

## COMMERCIAL INFORMATION

Defendants contend that the statute uses "commercial" in its broad sense and that, accordingly, the document at issue should be characterized as commercial. Plaintiff contends that the document should be characterized as legal, as opposed to commercial.

In *American Airlines, Inc. v. National Mediation Board, supra,* the Court of Appeals for the Second Circuit, in holding that employee authorization cards submitted by a union to the National Mediation Board were exempted from disclosure by § 552(b)(4), rejected a narrow definition of commercial. Instead, the Court adopted the following broad definition: " 'Commercial' surely means pertaining or relating to or dealing with commerce." *Ibid.* at 870. In *Brockway v. Department of Air Force*, 370 F.Supp. 738 (D.C.Iowa 1974), it was held that reports of a plane crash prepared by Cessna Aircraft Company were commercial information. The Court reasoned:

> The Cessna Aircraft Company being a private defense contractor, is unquestionably a commercial enterprise and, the reports it generates must generally be considered commercial information . . . *Ibid* at 740.

Likewise, in the present action, it is uncontested that PGE is a commercial enterprise. Furthermore, the memorandum at issue concerns a transaction integrally related to commerce: the construction of the control building at the Trojan nuclear power plant. I find that a legal memorandum prepared by a commercial entity's lawyer which assesses the legal implications and potentialities of a particular incident which the commercial entity was involved in during the normal course of its operation qualifies as commercial information as the phrase is used in 5 U.S.C. § 552(b)(4).

## PRIVILEGED OR CONFIDENTIAL

The issue as to whether the memorandum, which I have characterized as commercial information, is privileged or confidential as those terms are used in the Act, remains to be resolved.

After considering relevant case law, I conclude that the memorandum at issue falls within the established definition of "privileged" and within the established definition of "confidential".

I find that the document is privileged by virtue of the attorney–client privilege. It is uncontested that the document is a legal memorandum prepared by PGE's attorney and communicated to an agent of PGE; therefore, at least initially, the document was clearly privileged information. Furthermore, I find that the privilege was not waived when the memorandum was turned over to BPA. Although generally if privileged information is disclosed to a third party, it loses its privilege, courts have recognized that public policy demands an exception to this rule when the third party to whom the disclosure is made is a co–litigant with substantially identical interests. *See, Hunydee v. United States,* 355 F.2d 183 (9th Cir. 1965); *Continental Oil Company v. United States,* 330 F.2d 347 (9th Cir. 1964); *SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508 (D.Conn.1976); *see also, Duplan Corp. v. Deering Miliken Inc.,* 397 F.Supp. 1146 (D.S. C.1975). Although at the time that PGE turned over the memorandum BPA was not a party to the litigation, BPA was in the process of deciding whether or not to enter the litigation. The policy reasons which demand that the privilege not be waived when disclosure is made to a co–litigant are not weakened by the fact that the party with similar interests to whom the disclosure is made is in the process of deciding to intervene, as opposed to having already intervened.

■ Furthermore, the mere failure to explicitly restrict the re–disclosure of information does not constitute the waiver of an otherwise valid privilege.

Therefore, I conclude that the document remained privileged information after it was turned over to BPA.

■ Although the above conclusion is dispositive in itself, as previously stated, I find that the document is also confidential information, as the term has been construed by the courts. The most often cited construction of confidential is that in order to be confidential the disclosure of the information must have the effect of impairing the Government's ability to obtain necessary information in the future or of causing sub-

stantial harm to the competitive position of the person from whom the information was obtained. *National Parks and Conservation Ass'n v. Morton, supra.* In the present action, disclosure of the legal memorandum would impair the Government's ability to obtain necessary information in the future. It is often essential that there be free and open communication between two parties which have substantially the same interests when they are involved in litigation. To compel the disclosure of the memorandum at issue today, would virtually preclude the Government from engaging in meaningful communication with such co–litigants. No litigant will turn over information to the Government if by so doing the information becomes subject to disclosure, pursuant to the Freedom of Information Act, to the public which, of course, includes the opposing parties in the pending litigation.

In order to qualify as confidential, some courts have imposed the additional requirement that the information be of a type "which would customarily not be released to the public by the person from whom it was obtained." Senate Report No. 813, Cong. 1st Sess. 9 (1965), as quoted in *Ditlow v. Volpe,* 362 F.Supp. 1321 (D.D.C.1973); *National Parks and Conservation Ass'n v. Morton, supra.* I find that the document at issue today meets this requirement as well. It is uncontested that the document is a legal memorandum prepared by an attorney for his client. It is hard to imagine a category of documents which more readily meet the aforementioned requirement than legal correspondence between an attorney and his client.

Plaintiff argues that the document is not "confidential" information, because of the manner in which it was delivered to BPA by PGE. Plaintiff contends that the memorandum was simply one of a number of documents handed over in mass in response to a request from BPA asking to be supplied with all documents relating to the litigation between PGE and Bechtel Corporation. Plaintiff asserts, and contends that it is particularly significant, that in turning over the memorandum PGE did not specifi-

cally request that the memorandum not be subject to disclosure. Apparently, plaintiff's argument is that PGE's actions in turning the document over to the Government indicate that PGE did not consider the document to be confidential and that, in effect, they consented to its re–disclosure to third parties outside of the Government.

There is some dispute concerning what exactly was said between PGE and BPA regarding disclosure of the memorandum by BPA to third parties. It is uncontested that the document was received by the Government in response to a request by William W. Kinsey, attorney with the Office of General Counsel of BPA, to Ronald W. Johnson, attorney with the legal department of PGE. It is also uncontested that ever since plaintiff first requested the document, PGE has continually expressed its desire that the document not be disclosed.

▮ Assuming, as plaintiff contends, that the document was delivered without PGE expressly requesting that the document not be subject to re–disclosure, I still find that the document qualifies as "confidential" information. There is no evidence to support a conclusion that PGE consented to the memorandum being disclosed by BPA to third parties; the most which can be said is that they did not address the issue. I find that whether or not a party providing information to the Government couples the transfer of the information with a request that it not be re–disclosed is not determinative of whether the information is "confidential".[1] This is particularly true in a situation such as the present action in which the party turning the document over to the Government has subsequently stated its desire that the document not be re–disclosed.

▮ As stated in *M. A. Schapiro & Co. v. Securities and Exchange Com'n*, 339 F.Supp. 467 (D.D.C.1972),

"regardless of whether the information was submitted on the express or implied condition that it be kept confidential, a Court should determine, on an objective basis, that this is not the type of information one would reveal to the public."

The test as to whether information is "confidential" is an objective one, not a subjective one. *National Parks and Conservation Ass'n v. Morton, supra; Save the Dolphins v. U. S. Dept. of Commerce,* 404 F.Supp. 407 (N.D.Cal.1975). This concept has also been expressed as the requirement that the information be independently confidential based on its contents. In the present action this requirement is satisfied. A legal memorandum delivered from one attorney to another attorney, where the attorneys represent parties with substantially similar interests, is a document which is independently confidential.

In summary, I find that the document at issue is both "privileged" information and "confidential" information; therefore, it is exempted from disclosure by 5 U.S.C. § 552(b)(4). Because I find that the document at issue is exempted by 5 U.S.C. § 552(b)(4), I do not reach the issue of whether the document is exempted by 5 U.S.C. § 552(b)(5).

### ORDER

Based on the above and the record, it is ordered that defendant's motion for summary judgment is allowed and plaintiff's motion for summary judgment is denied.

[1]. *See also, Ditlow v. Volpe, supra*, in which the court points out that a mere request by a submitting person cannot turn not otherwise confidential information into exempt "confidential" information and that, likewise, the mere promise by an agency to not disclose information does not automatically qualify it as "confidential".