**Robert M. HUSTEAD, Plaintiff,**

v.

**Dr. Janet NORWOOD, in her capacity as Commissioner of Labor Statistics, Defendant.**

**No. 81–321–Civ–SMA.**

United States District Court,
S. D. Florida,
Miami Division.

Dec. 23, 1981.

Robert M. Hustead, Florida Rural Legal Services, Homestead, Fla., for plaintiff.

William J. Berger, U.S. Dept. of Labor, Atlanta, Ga., Clark Mervis, Asst. U.S. Atty., S. D. Fla., Miami, Fla., for defendant.

## MEMORANDUM OPINION

ARONOVITZ, District Judge.

This cause came on for consideration upon motions of both parties for summary judgment. The Court, having considered the entire record including the pleadings and affidavits and having heard arguments of counsel, finds that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law.

Plaintiff, Robert M. Hustead, representing the Florida Rural Legal Services, Inc., originally filed a request under the Freedom of Information Act (5 U.S.C. § 552, *et seq.*) with defendant, Dr. Janet Norwood, Commissioner, Bureau of Labor Statistics (BLS), United States Department of Labor, by letter dated July 16, 1980. The request was for "copies of the name and address lists of covered agricultural employers, excluding stock producers, for the State of Florida". The letter further asked for "any concommitant [sic] information reflecting the number of employees in each employing unit [if] in your possession".

By letter dated August 5, 1980, Dr. Norwood, the designated Disclosure Officer for the Bureau of Labor Statistics, denied the request on the ground that the information requested was obtained from the State of Florida under a pledge of confidentiality, which commitment precluded the release of the information by the BLS to the public. Dr. Norwood expressly invoked the "confidentiality" exemption from disclosure under 5 U.S.C. § 552(b)(4). Pursuant to 29 C.F.R.

Part 70, an appeal of Dr. Norwood's denial was made by plaintiff to the Department of Labor's FOIA Appeals Section by letter dated August 9, 1980. The response from that section was that it would be several months before the appeal could be processed because of the backlog of over 275 other FOIA appeals then pending. Plaintiff thereupon filed his complaint in this Court on February 17, 1981, seeking an order requiring the production of the requested documents.

■ The Court, of course, recognizes that the "purpose of the FOIA is 'to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language'" (*Federal Open Market Com. v. Merrill*, 433 U.S. 340, 99 S.Ct. 2800, 2808, 61 L.Ed.2d 587 (1979), and that the "Act squarely places the burden on the agency to sustain its action in withholding such records as exempt . . . ." (*Seafarers Inter. Union v. Baldovin*, 508 F.2d 125, 128 (5th Cir. 1975) vacated on other grounds 511 F.2d 1161 (5th Cir., 1975)). It is the Court's considered judgment that defendant has clearly met the burden here.

■ The documents being requested are reports (commonly referred to as the ES–202 reports) which are required to be filed by employers under the Florida Unemployment Compensation Law, F.S.A., § 443.-12(7) with the Bureau of Unemployment Compensation, Florida Department of Labor and Employment Security. These reports contain the name of the employer, the number of employees on his payroll during the middle of each month during the quarter, the total wages paid to all of his employees during the quarter, taxable wages under the Unemployment Compensation Law and contributions due. Additionally, the reporting unit of each covered employer is assigned an industry code based on information from the employer. The data in the quarterly reports are aggravated by industry and by county, and are used to produce a quarterly report of employment and payroll by industry for the state and for each county (Affidavit of John O'Hara, Chief of the Bureau of Research and Analysis, Florida Department of Labor and Employment Security).

Under Florida law, these reports are to "be held confidential and shall not be published or be open to public inspection (other than to public employees in the performance of their public duties), in any manner revealing the individual's or employing unit's identity . . . ." (F.S.A. § 443.12(7)).

The United States Department of Labor's Unemployment Insurance Service, which monitors the unemployment compensation system currently run by the states (see generally 42 U.S.C. § 501, *et seq.*; 26 U.S.C. § 3304; 20 C.F.R. Part 601), has not in the past and does not now require the states to submit to it the ES–202 reports collected by the states as a condition of continued participation in the federal-state unemployment insurance program. Indeed, the states are not required, in any way, to submit the reports to anyone for any purpose (Affidavit of William B. Lewis, Administrator, Unemployment Insurance Service, United States Department of Labor).

The Bureau of Labor Statistics is the principal data-gathering agency of the federal government in the broad field of labor economics, which includes information on employment, unemployment, wages, productivity, prices and occupational safety and health. In furtherance of its mission of collating and disseminating the most accurate statistical information available, the BLS utilizes many sources, both public and private, to collect the necessary data. The information obtained from the states in the form of the ES–202 reports, is utilized by the BLS as a significant component in the Bureau's master list of employers from which samples are drawn for many of the Bureau's statistical analyses, such as the monthly employment and unemployment figures (Affidavit of Dr. Janet L. Norwood, Commissioner of Labor Statistics, United States Department of Labor).

Because the BLS is not empowered with any statutory right to procure the data it needs, including the ES–202 reports at issue here, it frequently must give the source a

pledge of confidentiality. In the instant case, a pledge of confidentiality [1] was an absolute requirement in order for the BLS to secure the ES–202 reports from the State of Florida because of the nondisclosure requirements of F.S.A. § 443.12(7). In fact, Mr. O'Hara made it abundantly clear in his uncontroverted affidavit that if the BLS released the requested information, "the State of Florida will no longer furnish the name and address file of covered employers to the Bureau of Labor Statistics. In addition, we will bring this issue before the other states in the Interstate Conference of Employment Security Agencies (ICESA) so that all of the states will act together."

The Bureau of Labor Statistics' position in this case is that the requested information is protected from disclosure under section (b)(4) of the Freedom of Information Act (5 U.S.C. § 552(b)(4)), which provides that matters need not be disclosed if they are "trade secrets and commercial or financial information obtained from a person and privileged or confidential". In a leading case on the (b)(4) exemption, the District of Columbia Court of Appeals noted in *National Parks and Conservation Ass'n. v. Morton*, 498 F.2d 765, 766 (D.C. Cir., 1974) that, "[i]n order to bring a matter (other than a trade secret) within this exemption, it must be shown that the information is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential". *Accord, Continental Oil Co. v. F. P. C.*, 519 F.2d 31, 35 (5th Cir., 1975).

In this case, there is no dispute that the State of Florida is a "person" within the meaning of the Act. The definition of "person" found at 5 U.S.C. § 551(1) and (2) expressly includes a "public . . . organization" other than an agency of the federal government.

Nor is there any real dispute that the requested reports are commercial or finan-cial information. Unquestionably, information relating to the employment and unemployment of workers constitutes commercial or financial information within the meaning of the exemption. *Cf. American Airlines, Inc. v. Nat. Mediation Bd.*, 588 F.2d 863, 870 (2nd Cir., 1978). Therefore, as in *National Parks*, the issue before the Court is whether the requested information is "confidential" within the meaning of the exemption.

In *National Parks*, the court first stated that its prior decisions on the (b)(4) exemption had been guided by a particular passage from Senate Report No. 813 (89th Cong., 1st Sess. at 9 (1965)):

> This exemption is necessary to protect the confidentiality of information which is obtained by the Government through questionnaires or other inquiries, *but which would customarily not be released to the public by the person from whom it was obtained.* (498 F.2d at 766; emphasis the court's).

That is clearly the case here, for the information being sought was obtained by the Bureau of Labor Statistics from the State of Florida which, by law, could not release the information to the public.

The court went on in *National Parks*, however, to establish a second test that must be met in order for an agency to prevail in a (b)(4) exemption claim, namely:

> [C]ommercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained. (498 F.2d at 770). [2]

There can be no doubt on this record that disclosure of the requested information

---

1. This pledge, which is given to every state, reads:

    This confidentiality commitment precludes the release by the Bureau of Labor Statistics to other agencies or the public of any detail data for individual reporting units which are collected on the Unemployment Insurance Address File report, without the specific writ-ten authorization of the State Employment Security Agency.

2. This appears to be the Court's conclusion as to "the legislative purpose which underlies the exemption" (498 F.2d at 767). Significantly, in formulating this second test, the court cited a portion of the *legislative history of the FOIA* during which the late Senator Humphrey was

would impair the Bureau of Labor Statistics' ability to collect that data in the future. The uncontroverted affidavits of John O'Hara and William Lewis make that clear. And, it is reasonable to conclude that such an opening wedge of disclosure would make it difficult, if not impossible, for the Bureau of Labor Statistics to collect other data which is essential to its efficient operation. Department of Labor statisticians must continue to have access to the commercial and financial data which are the grist of reports such as the Consumer Price Index, the unemployment levels, wage and price surveys and the like, which is obtained only upon an assurance of a confidential pledge, without having to worry about reneging on that pledge.[3]

Finally, although not critical to the ultimate conclusion, the Court notes that the plaintiff has an alternate avenue for seeking the information; namely the filing of administrative claims by individual employees with the State.[4] Where this is the case, and if the Court were to believe that the balances were more equal than they are, this factor would help to tip the scales in favor of nondisclosure.

In view of the foregoing, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. Defendant's refusal to release the information sought by plaintiff is based on a valid assertion of exemption 4 of the Freedom of Information Act, which the Court finds to be peculiarly applicable to the Bureau of Labor Statistics.

---

assured "that sources of information relied upon by the Bureau of Labor Statistics .... was fully protected under the [(b)(4)] exemption ...." (*id.*).

**3.** The Court also recognizes that in this case, an ordered disclosure of the requested information, which would result in the State of Florida's future withholding of significant economic data from the Bureau of Labor Statistics may well result in unsettling disruptions of what is now a smoothly functioning federal-state sharing of an important governmental responsibility, namely the unemployment insurance program.

**4.** Plaintiff's stated reason for requesting the information is to be able to compare a list of registered employers of farm laborers with the requested list of employers reporting to the State of Florida for unemployment insurance purposes to determine disparities in coverage.