See also D.C., 527 F.Supp. 1163; D.C., 547 F.Supp. 846.

**9 TO 5 ORGANIZATION FOR WOMEN OFFICE WORKERS, Plaintiff,**

**v.**

**The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Defendant.**

**Civ. A. No. 80–2905–C.**

United States District Court, D. Massachusetts.

Dec. 2, 1982.

Motion to Amend Judgment Dec. 22, 1982.

John Reinstein, Massachusetts Civil Liberties Union Foundation, Boston, Mass., for plaintiff.

Ann Tretter and Joseph McGovern, Asst. U.S. Attys., Boston, Mass., Stephen L. Siciliano, Senior Counsel Board of Governors of the Federal Reserve System, Washington, D.C., for defendant.

MEMORANDUM

CAFFREY, Chief Judge.

Plaintiff 9to5 Organization for Women Office Workers (9to5) filed a complaint under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel the Board of Governors of the Federal Reserve System (the Board) to provide the plaintiff with copies of certain records in the possession of the Board concerning activities of the Boston Survey Group (BSG) and the Federal Reserve Bank of Boston (the Bank). The defendant has identified over 350 documents in its possession which, it believes, are responsive to the plaintiff's request. The Board, however, claims that many of the documents requested by 9to5 are protected from disclosure under 5 U.S.C. § 552(b)(4), which exempts "commercial or financial information obtained from a person and ... confidential." According to the Board, the documents which fit into this exemption contain material, not reasonably segregable from the non-exempt material, which the Bank has obtained during its 25-year membership in the Boston Survey Group, an organization which, according to the defendant, conducts salary surveys of its 40-odd members (all of whom have at least 500 employees), and distributes the results of the surveys to each member. According to affidavits of employees of the Bank and other members of the BSG, all members have pledged to treat information received through BSG membership as confidential, and not to divulge it to anyone.

This information has been contained in various letters and memoranda that over the past 25 years have passed between the Bank and the Board as a result of the Bank's efforts to fulfill the Board's requirement that each federal reserve bank around the country supply the Board with information relevant to the setting of the salaries of each reserve bank's employees. While each reserve bank selects its own employees, the level of compensation of every reserve bank employee is subject to the approval of the Board. 12 U.S.C. §§ 307, 341.

The parties have filed cross-motions for summary judgment on the "commercial exemption" issue. In order for the government to prevail in its attempt to prevent disclosure, it must prove, by a preponderance of the evidence, that the information is 1) commercial or financial in nature, 2) obtained from a person, and 3) confidential. *National Parks and Conservation Association v. Morton ("National Parks I"),* 498 F.2d 765, 766 (D.C.Cir.1974), *aff'd in part and reversed in part after remand sub. nom., National Parks and Conservation Association v. Kleppe, ("National Parks II"),* 547 F.2d 673 (D.C.Cir.1976). In its December 21, 1981 memorandum this Court found both that the Reserve Bank reports containing BSG information are commercial or financial in character, and that the information was obtained from a person. Therefore, the remaining issue before this Court is whether the information is "confidential" within the meaning of the exemption.

In the December memorandum this Court observed that genuine questions of material fact existed with regard to the confidentiality issue. On the basis of numerous memoranda of law, affidavits filed with the Court, as well as oral arguments from the parties, I now find that sufficient information has been provided to the Court. For the reasons set forth below, I find that the documents are not the kind of financial or commercial information that exemption 4 was designed to protect from disclosure; therefore, it will be ordered that the information be released to plaintiff.

Congress did not provide a definition for the word "confidential" as it is used in § 552(b)(4). In *"National Parks I," supra,* the Court of Appeals for the District of Columbia articulated a widely accepted two-pronged test for material claimed to be confidential under exemption 4. According to this test,

> commercial or financial matter is "confidential" for the purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Governments ability to obtain *necessary* information in the

future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained. 498 F.2d at 770 (emphasis added)

■ Defendant relies exclusively on the first part of this test, claiming that disclosure of the BSG information would subject the Federal Reserve Bank of Boston to expulsion from the BSG, and this would deprive the Board and the Bank of the survey information necessary to keep salaries paid to Bank employees "competitive" with other large employers in the Boston area. The burden is on the Board to establish both elements of the first prong of the test: first, that disclosure is *likely* to impair the Government's ability to obtain such information in the future, and secondly, that the information is "necessary."

The Board has filed numerous affidavits from officials of the Board, the Federal Reserve Bank of Boston, and other BSG members—those affidavits uniformly suggest that disclosure of the sought-after information will result in the Bank's expulsion from the BSG. The Board points out to this Court that the affidavits are uncontested, contending that the Board has, therefore, met its burden of proof as to likelihood of impairment. However, this Court is aware of the necessarily peculiar nature of the affidavits: the prediction of expulsion proffered by the affiants are self-serving, and could conveniently become self-fulfilling prophecies. True, the affidavits are uncontroverted, but it is difficult to imagine what 9to5 could possibly do to counter the Bank's contention. Even if expulsion from the BSG would not result from disclosure, 9to5 would have no way to establish that fact. Thus, the affidavits are probative, though not dispositive, as to the likelihood of future impairment.

Plaintiff contends that the terms of the August 2, 1982 consent decree between the BSG and the Massachusetts Attorney General undermine the Board's claims as to the likelihood of the Bank's expulsion from the BSG. In particular, 9to5 notes that section IV of the decree mandates that the by-laws be changed to allow BSG members to dis-

close aggregate salary information such as that requested in this case. In reply, the Board correctly observes that the decree is prospective, and that 9to5 seeks information contained only in *past* reports. However, the Board has not acknowledged, and it is a fact, that the by-law modification is not limited in its application to future reports. Thus, neither the letter or the spirit of the decree lend credence to the assertions that disclosure of the requested documents would necessarily result in expulsion of the Bank from the BSG.

The contentions of both parties as to the likelihood of impairment of the Government's ability to garner information are, at best, speculative. The evidence on this issue is, at present, unable to support a finding of summary judgment for either party. I again rule, therefore, that a genuine issue of material fact exists with regard to the "likelihood of impairment" element of the exemption 4 test.

There is, however, a remaining element of the *National Parks I* confidentiality test that must be addressed: in order for the Government to prevail it must establish that the information, the collection of which the Government claims would be impaired by disclosure of the sought-after documents, is "necessary" within the meaning of § 552(b)(4).

Since the *National Parks I* opinion gives little guidance as to the meaning of "necessary" as it is to be applied in exemption 4 cases, this Court must look to the statute, to the legislative history, and to case law in order to properly determine whether the BSG information is, in the context of the FOIA, "necessary" to the Government.

Congress passed the Freedom of Information Act in response to the growing inability of the public to intelligently and meaningfully evaluate Government programs and decision making due to a lack of access to pertinent Government-controlled information. As the Court of Appeals for the District of Columbia observed "the touchstone of any proceedings under the Act must be the clear legislative intent to assure public access to all governmental rec-ords whose disclosure would not significantly harm specific governmental interests. The policy of the Act requires that the disclosure requirement be construed broadly, the exemptions narrowly." *Soucie v. David,* 448 F.2d 1067, 1080 (1971). The *National Parks I* court went on to state that "a court must also be satisfied that non-disclosure is justified by the legislative purpose which underlies the exemption." *National Parks I,* at 767.

■ The "commercial or financial information" exemption is intended to protect the interests of both the Government, and the individual from whom the information is obtained. Since the Board of the Federal Reserve is asserting only that its interests will be compromised by disclosure, not that the interests of other parties will be injured, this Court need only examine the rationale for the exemption as it pertains to the Government.

■ The "financial information" exemption was created to protect the Government's access to commercial and financial data—information that can be collected, and effectively utilized, only through the cooperation of non-governmental entities. Unless persons having necessary information can be assured that it will remain confidential, they may decline to cooperate with officials, thus impairing the Government's ability to make intelligent, well-informed decisions. While such reasoning would, at first, seem to apply to the present case, an inspection of the legislative history reveals that one of the major Congressional goals was to safeguard information given to an agency in its *official capacity. See* H.R. Rep. No. 1497, 89th Cong., 2nd Sess., 10 (1966); S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965), U.S.Code Cong. & Admin.News 1966, p. 2418. The House and Senate Reports reflect Congressional concern that the public should feel secure when confiding in government agencies such as the Bureau of Labor Statistics, whose effective operation depends largely on an uninterrupted, complete flow of commercial and financial information. As the Senate Report explains:

This exemption is necessary to protect the confidentiality of information which is obtained by the Government through *questionnaires or other inquiries* . . . . S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965) (emphasis added).

█ The clear implication is that Congress was concerned about guarding agency access to information which it *requested* from individuals. Congress did not want FOIA requests to inhibit individuals from cooperating with the government, whether that cooperation was theoretically obligatory, i.e. compelled by statute, or voluntary. Neither the floor debate, nor the Congressional Reports, reflect any particular Congressional desire that an exemption to the FOIA be created to protect information gained by an agency through commercial relationships established with non-governmental business entities.

█ The information provided to the Federal Reserve Bank by the BSG undoubtedly facilitates the establishment of a competitive compensation structure; however, the information is not "necessary," within the meaning of exemption 4, to the Federal Reserve Bank's role in the Government. The salary data is not of such importance to the Government, or more importantly, to the governing process, that it should be exempt from the general policy of disclosure embodied in the Act.

The Board contends in its memorandum, however, that its participation in the BSG survey is necessary and therefore, that the FOIA exemption is applicable. The Board cites its policy that regional Federal Reserve Banks are "encouraged to participate, when possible, in broadly based community salary surveys," arguing that disclosure of the survey information will necessarily lead to the Bank's expulsion from the BSG, thus depriving the Bank of "necessary" information in the future. However, affidavits filed by the Board indicate that only three other Federal Reserve Banks (Philadelphia, Chicago, and Dallas) participate in similar surveys. This suggests, as observed in plaintiff's brief, that the remaining regional Reserve Banks are able to establish salary levels without the aid of such surveys and that the Board has had sufficient information to review the salaries proposed by those banks. That only three of the other Reserve Banks participate in salary surveys clearly undermines the Board's claim that such information is "necessary" within the meaning of the Act, rather than merely useful. Moreover, even if this Court were to accept the general proposition that salary survey information is "necessary" within the meaning of the *National Parks I* test, the Board's exemption 4 claim is further weakened by the fact that the Boston Bank utilizes other wage information such as the Hanson-Webber EDP Salary Survey, and data obtained from the Bureau of Labor Statistics.

In summary, I find that the policy considerations embodied in the FOIA demand that this Court construe the FOIA's general disclosure requirement broadly, and the exemptions narrowly. For the reasons stated above, I find that the information requested is not "confidential" within the meaning of § 552(b)(4). The disclosure of the sought-after documents will not impair the government's ability to obtain *necessary* information in the future; therefore, an order should enter granting plaintiff's motion for summary judgment.

### ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. Plaintiff's motion for summary judgment is allowed.

2. That, on or before January 7, 1983, the Board of Governors of the Federal Reserve System turn over to 9to5 Organization for Women Office Workers all requested documents not protected by this Court's previous orders.

### MEMORANDUM AND ORDER

On Motion To Amend Judgment

CAFFREY, Chief Judge.

This matter came before the Court on a motion to amend judgment filed by defend-

ant, the Board of Governors of the Federal Reserve System. Defendant contends that the Court's preliminary determination that neither party was entitled to a finding of summary judgment based on the evidence as to the "likelihood of impairment" sub-issue is logically and legally inconsistent with the Court's ultimate order. Defendant's contentions are without merit.

 The Government claims that the documents requested by 9to5 are protected from disclosure under 5 U.S.C. § 552(b), exemption 4 of the Freedom of Information Act. A close reading of this Court's December 2 Memorandum and Order reveals that in order to prevent disclosure of "confidential" commercial or financial information pursuant to exemption 4, the Government must prove, by a preponderance of the evidence, that disclosure of the information "is likely to have either of the following effects: (1) to impair the Government's ability to obtain *necessary* information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information is obtained." *National Parks and Conservation Association v. Morton* ("*National Parks I*") 498 F.2d 765, 766 (D.C.Cir.1974). As noted in the earlier memorandum, defendant relies exclusively on the first part of the *"National Parks I"* test in it's efforts to prevent disclosure. Thus, as this Court stated before, the burden is on the Board to establish *both* elements of the first prong of the test: first, that disclosure is *likely* to impair the Government's ability to obtain such information in the future, and secondly, that the information is "*necessary*." The test is a conjunctive one: in other words, if the Government fails to meet its burden as to either element, then it cannot prevail.

The Government's present contention, that the Court's observations in its earlier memorandum that there was an issue of fact herein, should have precluded the granting of summary judgment, is wide of the mark. In order to succeed herein the Government must pass a two-element test and the existence of a question of fact as to whether it can pass one element of the test does not require the denial of summary judgment to the plaintiffs because it can be said, as a matter of law (with no issue of fact), that the Government cannot successfully pass the second element of the test. Regardless of how the issue of fact as to the first element of the test would be resolved by the trier of fact, it is clear as a matter of law that the Government's inability to pass the second element of the test warrants the granting of summary judgment to plaintiffs.

For the reasons set forth above, I rule that the original order shall not be disturbed, and the defendant's motion to amend the judgment should be, and hereby is, denied.