**CRITICAL MASS ENERGY PROJECT, Plaintiff,**

v.

**NUCLEAR REGULATORY COMMISSION, Defendant.**

Civ. A. No. 84–1943.

United States District Court, District of Columbia.

Sept. 26, 1986.

Eric R. Glitzenstein, Public Citizen Litigation Group, Washington, D.C., for plaintiff.

Charles W. Sorenson, Jr., Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This Freedom of Information Act ("FOIA")[1] case is before the Court on the parties' cross-motions for summary judgment. The material facts are undisputed, and the single issue of law before the Court is whether certain reports now given to the defendant agency by a non-party upon the former's promise not to divulge them are exempt from disclosure under FOIA as confidential commercial information. For the reasons set forth below, the Court concludes that the reports are exempt and will deny plaintiff's and grant defendant's motions for summary judgment, and dismiss the amended complaint with prejudice.

1. 5 U.S.C. § 552 (1982).

## I.

Plaintiff Critical Mass Energy Project ("CMEP"), a non-profit consumer organization, seeks copies of various reports supplied by the Institute of Nuclear Power Operations ("INPO") to the Nuclear Regulatory Commission ("NRC"), the federal agency that regulates and licenses the construction and operation of commercial nuclear power plants in the United States.[2] INPO, also a non-profit corporation, is a consultative association established by the nuclear electric utility industry in 1979 in the wake of the Three Mile Island accident, and has as its members all 55 utility companies now producing domestic nuclear power. As one of its services to its members, INPO conducts "peer reviews" of their operations, and prepares reports of its analyses and recommendations with respect thereto. Some of the reports concern "events" with safety implications.[3]

Pursuant to a Memorandum of Agreement it reached with the NRC in April of 1982, INPO now routinely, and voluntarily, furnishes copies of its reports to the NRC, on condition, however, that the NRC not release them to others without INPO's consent. In January, 1984, CMEP made its FOIA request of NRC for copies of the INPO reports, which the NRC denied, INPO not consenting, on the ground that they were exempt from disclosure as confidential commercial information. This action for injunctive relief followed.

## II.

Congress has exempted from disclosure under FOIA a category of information known as "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4) (1982).[4] The NRC does not contend that the INPO reports are trade secrets or financial information, or that they are privileged, but, rather, that they are "commercial information" and are "confidential" within the meaning of the exemption.

■ The Court of Appeals for the District of Columbia Circuit has held that the word "commercial" is to be given its ordinary meaning when read in conjunction with FOIA. *Public Citizen Health Research Group v. Food and Drug Administration,* 704 F.2d 1280, 1290 (D.C.Cir.1983). Thus, information is commercial if it relates to commerce, *American Airlines, Inc. v. National Mediation Board,* 588 F.2d 863, 870 (2d Cir.1978), or it has been compiled in pursuit of profit. *See Public Citizen,* 704 F.2d at 1290. CMEP argues that the INPO reports cannot be commercial, because INPO itself is a not-for-profit entity. The argument, however, is too categorical. While a factor to be considered, INPO's non-profit status is not by itself determinative. *See American Airlines,* 588 F.2d at 870. And INPO's constituent utility companies are assuredly commercial enterprises engaged in the production and sale of electrical power for profit. The revelation of the details of the operations of their nuclear power plants, whether in critical or laudatory contexts, could materially affect their profitability in multiple ways. The Court concludes that the INPO reports must be deemed to be "commercial" information in all relevant senses of the word.

■ For the reports to be exempt from disclosure, however, they must not only contain "commercial" information but be "confidential" as well. Information is said to be "confidential" if it is customarily not

---

**2.** CMEP's amended complaint also included a count seeking access to the advisory process between INPO and the NRC under the Federal Advisory Committee Act, 5 U.S.C. app. I (1982). The parties reached a settlement resulting in the dismissal of that count.

**3.** Much of the factual "event" information contained in the reports is already available to the public; the NRC independently requires its li-

censees to report similar information to it directly, and the information derived from licensees is concededly disclosable under FOIA.

**4.** It is undisputed that the INPO reports are "obtained from a person," private associations and corporations having been defined as "persons" under FOIA. 5 U.S.C. § 551(2); *Gulf & Western Industries v. United States,* 615 F.2d 527, 529 (D.C.Cir.1979).

released to the public by the person from whom the government obtains it, *Board of Trade v. Commodity Futures Trading Commission,* 627 F.2d 392, 404 (D.C.Cir. 1980), and if nondisclosure is justified by the legislative purpose underlying the exemption. *National Parks and Conservation Association v. Morton,* 498 F.2d 765 (D.C.Cir.1974) (*"National Parks I"*).[5] That legislative purpose is to permit an agency to withhold information acquired from nongovernmental sources which is necessary to its mission if its disclosure is likely either to impair the government's ability to obtain such information in the future or to cause substantial harm to the competitive position of its source. *National Parks I,* 498 F.2d at 770. The test is an objective one, however; the government's promise of confidentiality alone is not dispositive. *Washington Post Co. v. Department of Health and Human Services,* 690 F.2d 252, 268 (D.C.Cir.1982).

■■ NRC does not maintain that release of the reports will compromise anyone's competitive position, and CMEP does not doubt that the NRC finds the INPO reports necessary to its functions in the sense of being useful.[6] CMEP disputes, however the assertion that divulging them pursuant to FOIA would impair NRC's ability to get them (or their substance) in the future. The NRC already receives the same data its members send to INPO directly from the utilities themselves, the utilities being required to provide it as a condition of being licensed, and the INPO reports merely interpret and analyze that data, a task that CMEP says NRC could do for itself. Moreover, it says, NRC could simply subpoena the INPO reports, or adopt regulations requiring their submission by INPO's licensee-members if INPO resists.

But INPO itself is not a licensee. It is a voluntary membership organization of licensees, formed for the purposes of exchanging knowledge and experience with one another, and of rendering consensus judgments upon matters relating to the safe and efficient operation of nuclear power plants generally. INPO is not regulated by the NRC, and is under no legal obligation to report anything to the NRC, or even to prepare reports at all. It is fully autonomous, and could abandon its peer review process altogether, or disband entirely as easily as it came into existence.

It is clearly important for the NRC's purposes that INPO continue to be a forum for industry introspection and that it continue to make reports of the results of that process. It is also important that the NRC continue to receive the reports. Even assuming that the NRC is, in fact, capable of generating the substance of the reports on its own, and leaving aside all considerations of the time required for and cost to it to do so, it is nevertheless of considerable value to the NRC to be privy to the industry's own contemporaneous collective insights on problems of common—indeed, universal—concern, which is what it now obtains from INPO by way of its reports. And it is preferable to have the INPO reports furnished to the NRC voluntarily, rather than delivered up under compulsion in circumstances less conducive to candor, accuracy, and timeliness. The Court finds that the NRC's ability to acquire the information imparted by the INPO reports will likely be impaired if it is not permitted to honor its commitment to INPO to keep them confidential, and concludes that they are exempt from disclosure under FOIA.

---

5. Although INPO does not make its reports generally available to the public, CMEP notes that the reports are sent to the utility companies themselves, and occasionally to industry consultants, contractors, and certain vendors; in short, to nearly everyone who may be interested except the public-at-large. The affidavit of the Director of the Communications Division of INPO states, however, that the instances in which reports are made available to non-members of INPO are the exceptions rather than the rule.

6. The Court of Appeals has held that "necessary" information must be sufficiently important to the carrying out of the government's functions. *See Washington Post Co. v. Department of Health and Human Services,* 690 F.2d 252 (D.C. Cir.1982).

For the foregoing reasons, therefore, it is, this 26th day of September, 1986,

ORDERED, that plaintiff's motion for summary judgment is denied; and it is

FURTHER ORDERED, that defendant's motion for summary judgment is granted, and the amended complaint is dismissed with prejudice.